THE CHICAGO, MILWAUKEE & ST. PAUL R'Y CO. v. SHEA,
COUNTY TREASURER, ET AL.

1. **Taxation in aid of Railroads:** CONSTITUTIONALITY OF STATUTES: CHAP. 123. LAWS OF 1876, AS AMENDED BY CHAP. 173, LAWS OF 1878. Chapter 123, Laws of 1876, as amended by chapter 173, Laws of 1878, providing for the taxation of cities, towns and townships to aid in the construction of railroads, *held* to be constitutional, on the authority of the former decisions of this court. See cases cited in opinion.

2. ———: CERTIFICATE OF TOWNSHIP CLERK TO COUNTY AUDITOR: FORM OF: WHAT IS SUFFICIENT. Where a tax was voted by a township in aid of a railroad, under chapter 123, Laws of 1876, and the certificate thereof made by the township clerk to the county auditor did not show all the conditions upon which the tax was voted, as required by the statutes, except by reference to a copy of the notice of the election, which was attached to the certificate and marked and referred to as exhibit A, and so made a part of the certificate, but the board of supervisors regarded the certificate as sufficient, and levied the tax, and the road was actually built according to the terms of the vote, *held* that the collection of the tax would not be enjoined on the ground that the certificate was not sufficient in and of itself, without reference to the attached notice, to give the board jurisdiction to make the levy. *Minnesota and I. S. R'y Co. v. Hiams*, 53 Iowa, 501, distinguished.

3. ———: COMPLIANCE WITH CONDITION TO CONSTRUCT AND OPERATE ROAD. Where a condition of a tax voted in aid of a railroad was that the road should be "constructed and operated" to a depot at a certain place by a given time, *held* that it was sufficiently complied with by the construction of the road to the given point by the time named, and the continuous operation of it thereafter, even though the road was not fully completed, and the depot was only a temporary one, and the service was not first class.

4. ———: TAX NOT FORFEITED BY LEASE OF ROAD. A tax voted in aid of a railroad is not forfeited by a perpetual lease of the road made in good faith to another company. *Manning v. Mathews*, 66 Iowa, 675, distinguished.

5. ———: INCORPORATED TOWN VOTING WITH TOWNSHIP IN WHICH SITUATED. When the question is whether a township shall aid in the construction of a railroad by voting a tax, all the voters of the township, including such as reside within an incorporated town which lies wholly or in part within the township, may lawfully vote at such election. Compare *Ryan v. Varga*, 37 Iowa, 80.

6. ———: UNDUE INFLUENCE UPON VOTERS: TAX VOID. Where the citizens of a town appointed a committee to work up the voting of a railroad-aid tax in another township of the county, and the railroad com-

pany afterwards employed one of the same committee to do the same thing on its behalf, and he induced men to vote for the tax by offering to pay them fifty cents on the dollar for the certificates of taxes paid by them, *held* that the tax so voted was void on account of the undue influence so brought to bear upon the voters.

*Appeal from Palo Alto Circuit Court.*

TUESDAY, DECEMBER 15.

ACTION to enjoin the collection of taxes voted in aid of the Cedar Rapids, Iowa Falls & Northwestern Railroad Company. A part of the relief asked by the plaintiff was refused, and both parties appeal, but the plaintiff under the statute must be regarded as the appellant.

*Geo. E. Clark* and *T. W. Harrison,* for appellant.

*Soper, Crawford & Carr* and *S. K. Tracy,* for appellees.

SEEVERS, J.—Taxes were voted in six townships in aid of the Cedar Rapids, Iowa Falls & Northwestern Railway Company, and in five of the townships the district court held that the taxes were valid, and as to them the petition was dismissed on the merits. In Lost Island township the court held the taxes to be invalid, and the relief asked by plaintiff as to said taxes was granted. The plaintiff's appeal will be first considered, and it can be more intelligently done by determining in the order presented by counsel the several objections urged against the validity of the taxes.

I. They were voted under and in accordance, as is claimed, with the provisions of chapter 123 of the Acts of the Sixteenth General Assembly, as amended by chapter 173 of the acts of the Seventeenth General Assembly, and it is insisted that these statutes are unconstitutional for the same reasons as were urged in *Stewart v. Board of Supr's,* 30 Iowa, 9, and the comparatively late cases of *Renwick v. Davenport & N. W. R'y,* 47 Id., 511, and *Snell v. Leon-*

1. TAXATION in aid of railroads: constitutionality of statutes: chap. 123, Laws of 1876, as amended by chap. 173 Laws of 1878.

*ard*, 55 Id., 553. We are not disposed to enter upon the discussion of this question again, and deem it only necessary to say that the constitutionality of the statutes in question must be affirmed on the authority of the cases above cited.

II. The statute provides that the notice of the election shall "specify the time and place for holding the election, the line of railroad proposed to be aided, the rate per centum of tax to be levied, and whether the entire per centum voted is to be collected in one year, or one-half collected the first year and one-half the following year, and the amount of work upon said proposed railroad required to be completed before said tax shall be paid to the railroad company, and when the same shall be performed, and to what point said road shall be fully completed;     *     *     *     and the township · clerk     *     *     *     shall forthwith certifiy to the county auditor the rate per centum of the tax thus voted by such township,     *     *     *     the year or years during which the same is to be collected     *     *     * under the conditions and stipulations of said notice, together with an exact copy of the notice under which the election was held." Chapter 123, Laws 1876. It is not claimed that the notices do not in all respects comply with the statute, except as hereafter stated, but it is insisted that the certificates of the township clerk are materially defective. The particular defect insisted on is that the notices are not incorporated into and made a part of the certificate in that way, and that, without reference to the notice which is attached to the certificate, it fails to show the conditions and stipulations upon which the tax was voted. The certificates are substantially alike, and state the rate per centum of the tax voted; the road in aid of which the tax was voted; that the tax was to be levied on the assessment of 1881, and collected that year, on condition that the road should be constructed and operated from a point of connection with the Minneapolis & St. Louis Railway, in Humboldt, Iowa, to a

*Marginal note:* 2. ——: certificate of township clerk to county auditor : form of : what is sufficient.

depot located within the incorporated town of Emmetsburg, and within one-half mile of the court-house in said town, on or before January 1, 1882. The certificates further state that the work of constructing the railway shall be commenced within ninety days from the second day of May, 1881, otherwise the tax to be wholly forfeited. A true copy of the notice of election hereto attached, marked "Exhibit A" and made a part hereof.

It will be conceded that all the conditions and stipulations upon which the tax was voted cannot be ascertained from the certificate of the township clerk, unless it is proper and competent to refer to the copy of the notice which is attached to the certificate. Appellant claims that no such reference can be made, and that the defect in the certificate is jurisdictional, and therefore the tax could not be legally levied. In support of this position, *Minnesota & I. S. R. Co. v. Hiams*, 53 Iowa, 501, is cited. The certificate in that case and the one at bar are substantially the same, but in the cited case the board of supervisors refused to levy the tax because the certificate of the township clerk was defective. The court was asked, in a *mandamus* proceeding, to compel the board to disregard the defect and levy the tax. This the court declined to do. In the case at bar the board of supervisors levied the tax, and must have, therefore, determined that the certificate was not defective. Taking the certificate, and the notice thereto attached and made a part of it, their sufficiency must be conceded, except as hereinafter stated. It is not a case, therefore, in which there was no certificate, but a defective one merely; and the board of supervisors, the tribunal called on to act, has determined that the certificate sufficiently complied with the law. This is a collateral attack on such determination, and therefore clearly, we think, is within the rule established in *Ryan v. Varga*, 37 Iowa, 78. Before levying the tax it was the province and duty of the supervisors to determine, among other things, that the requisite certificate from the township clerk was on file in

the office of the county auditor, and their determination cannot be impeached in this collateral proceeding. It must be remembered that the objection to the certificate is exceedingly technical, and while, it has been held that the board should not be compelled by *mandamus* to levy the tax notwithstanding such objection, we are unwilling to hold that their determination that the certificate was sufficient can or should be set aside in this proceeding. In considering the question under consideration, it should be conceded that the road was constructed in substantial compliance with the notice of the election, and that the tax-payers got precisely what they bargained for. This being so, we are not disposed to give force and effect to mere technical objections which did not affect the substantial rights of the parties.

III. The notices provide that the road shall be completed to Emmetsburg, in Palo Alto county, Iowa, "on or before July 1, 1882," and shall be "constructed and operated     *     *     *     to a depot located within the incorporated town of Emmetsburg, and within one-half mile of the courthouse in said town, on or before January 1, 1882," and therefore it is said that the conditions on which the taxes were voted have not been complied with. The notices, however, did not require that the road should be completed by January 1, 1882. It will be observed that the notices required that the road should be completed to the point named by July 1, 1882, and it is not claimed that this was not done; but it was required that the road should be constructed and operated to a depot at Emmetsburg by January 1, 1882. The road was constructed and operated to such point by that time. A depot was partially erected, but the road was not ballasted, and in other respects it could not be regarded as a first-class completed road. But, as we have said, the road was operated from that time continuously. The service, however, was not first-class, and the notice did not require that it should be. A building was used as a temporary depot,

*3. ——: compliance with condition to to construct and operate road.*

which the evidence shows to have been sufficient for the purpose for which it was used. Track was laid for nearly a mile beyond the depot. We are of the opinion that the road was constructed and operated to a depot at the place named in the notices by the first day of January, 1882. *Muscatine W. R. Co. v. Horton*, 38 Iowa, 33.

It is also urged that the notices fail to state where and to what point the road shall be completed. We are of the opinion that it does state such facts. The road was to be completed to Emmetsburg by July 1, 1882, and the amount of work to be done before the tax should be paid is also stated; for the notices state that the road shall be constructed and operated to a depot located at said place by January 1, 1882.

IV. The taxes were voted in May, 1881, and in June thereafter the road, in aid of which the taxes were voted, was leased in perpetuity to the Burlington, Cedar Rapids & Northern Railroad Company, and since its construction it has been operated by the last named company. The statute provides that the tax-payers are entitled to stock for the amount paid by them in the company in aid of which the taxes were voted; and it is provided by statute that when any railroad corporation shall have made contracts for the payment to it upon delivery of stock in such company, and shall, subsequent to such contracts, have changed its corporate name, or when the real ownership in the property, rights, powers and franchises has passed legally or equitably into any other company, no such contracts shall be enforced in law or equity until the tender or delivery of stock in the last named corporation or company. Code, § 1302. Inasmuch as the Burlington Company refused to issue stock to the tax-payers, it is insisted that the collection of the tax cannot be enforced. The name of the corporation in aid of which the taxes were voted has not been changed, and under the terms of the lease the corporate name of the company continues to exist, and it is required to so continue as long as the lease is in force, and

*4. ———: tax not forfeited by lease of road.*

we are unable to conclude that under the lease the real ownership of the property, rights, powers and franchises have passed to the Burlington Company.

The lease provides that the last named company shall take full possession of the property demised, and pay all taxes, and provide rolling stock sufficient to transact the business, and keep the same and the road in good condition, and pay to the lessor an annual rental therefor of 30 per cent of the gross earnings, which the lessee guarantied should amount to a sufficient sum to pay the semi-annual interest on certain bonds which were executed by the lessor, the proceeds of which were used in constructing the road. There is no sufficient evidence showing that this lease was not executed in good faith, or that it was not to the interest of the lessor to have executed it. We therefore cannot say, as a matter of law, that it was executed as a fraud upon the tax-payers. Nor can we say that the contract is any thing else than it purports to be on its face. We therefore must hold that it is a lease, and that both the legal and equitable title to the property remains in the lessor. For ought we can possibly know, the lease is exceedingly beneficial to the stock-holders in the lessor company, and they may realize more under the lease than they would have done if the lessor company had operated the road. For the reasons stated, the statute above quoted has no application to the present case. It is further claimed that the facts above stated bring the case within the rule established in *Manning v. Mathews*, 66 Iowa, 675; but it is evident that the cases are clearly distinguishable. In the cited case the road in aid of which the taxes were levied was sold and conveyed to another company. The road, therefore, belonged to and was the property of the purchaser.

V. Emmetsburg is an incorporated town, and a part of its territory is in the township of Emmetsburg, and a part of the territory of the incorporation is in Freedom township. Elections were called in both of these townships, and the voters residing

5. ——: incorporated town voting with township in which situated.

on the territory of the corporation within Freedom township voted in that township, and those residing in Emmetsburg township voted in that township. It is insisted that the collection of the taxes in these townships cannot be enforced, because the statute contemplates that where a township embraces an incorporated town the whole township cannot participate in an election for the purpose of voting taxes in aid of the construction of a railroad. The argument is that the incorporated town may separately so vote, and so may the township. But, in our opinion, the statute does not so provide. The statute provides that any township or incorporated town may so vote. If a township embraces an incorporated town, and it is proposed that the township shall aid in the construction of the road, the voters in the corporation are entitled to vote at such election. It is possibly true that the voters in the corporation may impose such burden on themselves; but, as the township may do so, the voters in the corporation are clearly entitled to vote at such election. We understand this question to have been determined adversely to the appellant in *Ryan v. Varga*, 37 Iowa, 80.

VI. The defendants appealed from the decision of the court holding that the taxes voted in Lost Island township were invalid. The court, we presume, held that the collection of the taxes in this township could not be enforced because of the following fact: The citizens of the town of Emmetsburg appointed a committee to take charge of and work up the tax. George B. McCarty was one of such committee. Afterwards the railroad company entered into a contract with the persons so appointed, by the terms of which the company agreed to pay the persons composing the committee five per cent of all the taxes voted, to the amount of $40,000, in consideration of which they were to procure petitions to be circulated, to see that elections were called, to look after the company's interests in said local-aid matters, and see that the voters were

6 ———: undue influence upon voters: tax void.

out at elections, and see that all necessary steps were taken to secure said local-aid." McCarty was at the election in said township, and made a proposition to the voters that if they voted the tax for the railroad they would pay them fifty cents on the dollar for each dollar they voted on tax. Or, as another witness testifies, the proposition was "that all who voted for the tax, when they paid it, and presented their certificates to a certain party here in town, they would buy the certificates and pay fifty cents on the dollar." This proposition only included resident tax-payers and voters. The evidence further shows that prior to the proposition the expression of the voters was against the tax. There were only fourteen votes cast at the election, and all were in favor of the tax. These voters, or some of them, testify that they intended to vote against the tax, but changed their minds after the proposition was made. Counsel for the defendants do not claim that the proposition made did not unduly influence the voters, but their contention is that McCarty made the proposition in his own behalf, and not for the company, and that he was not authorized to bind or compromise the company in this respect. Under the contract, as we read it, McCarty was an agent of the company, and fully authorized to do whatever he deemed necessary to obtain votes for the tax. For whom he made the proposition we are uncertain,—that is, who was to pay the tax-payers,—but this is immaterial. He made the proposition for the purpose of effectuating the purpose contemplated in the contract, and we think the corporation is bound by what he did. He was authorized and directed to see "that all necessary steps were taken to secure said local aid." His determination of what was necessary is binding on the company.

Each party must pay the cost made by him, and the judgment on both appeals is

                                        AFFIRMED.