Palo Alto County v. Harrison.

---

PALO ALTO COUNTY v. HARRISON.

1. **Practice in Supreme Court:** ADDITIONAL ABSTRACT FILED AFTER ARGUMENT CLOSED. This court will not consider an additional abstract filed by the appellant, without leave, after the case has been fully argued by the appellee, if it is filed at or after the submission of the cause, or so near thereto as to give the appellee no opportunity to correct any errors or misstatements which might be contained in it. (See cases cited in opinion.) But where, as in this case, the additional abstract was served on the appellee and filed three months before the submission of the cause, and appellee afterwards filed an additional argument based in part upon the record as made by the additional abstract, *held* that it should not be disregarded, and a motion to strike it from the files is overruled.

2. **Practice:** TRIAL OF EQUITY CAUSE: OFFERING DOCUMENTS IN EVIDENCE: HOW DONE. A party cannot be said to offer documents in evidence on the trial of an equity case when he simply makes an oral offer to introduce them. He should file the documents with the evidence in the case, or at least produce them for the inspection of the court.

| 68 | 81 |
| 87 | 51 |
| 87 | 77 |
| 68 | 81 |
| 91 | 599 |
| 68 | 81 |
| 92 | 43 |
| 68 | 81 |
| 96 | 196 |
| 96 | 590 |
| 68 | 81 |
| s104 | 387 |
| 68 | 81 |
| 133 | 615 |

3. **Practice in Supreme Court:** TRIAL DE NOVO: IMMATERIAL EVIDENCE OMITTED FROM RECORD. On the review of an equity case triable *de novo*, if at all, in this court, while the rule is that all the evidence *offered* should be brought up, yet, if it appears from an inspection of the record that some item of evidence which was irrelevant to any issue in the case, or entirely immaterial, was omitted from it, a trial *de novo* will not be denied on account of such omission.

4. **Practice:** IDENTIFCATION OF DOCUMENTARY EVIDENCE FOR PURPOSES OF APPEAL. Where the judge's certificate was not attached to the evidence, but it identified the depositions by giving names of witnesses, and of officers by whom taken, and date of filing, and identified the different items of documentary and record evidence by letters and numbers, or by such references to their date and contents, or to the book and page where recorded, as would enable the clerk to determine with reasonable certainty what was intended, *held* that it was sufficient for the purposes of a trial *de noro*.

5. **Specific Performance:** CONDITIONS OF ENFORCEMENT: CONTRACT TO CONVEY SWAMP LANDS: RATIFICATION BY ELECTION PROCURED BY FRAUD: FAILURE OF CONSIDERATION. A specific performance will not be decreed when the contract is founded in fraud, imposition, mistake, or undue advantage, or is not supported by an adequate consideration. Accordingly, where a contract was entered into between defendant's grantor and the plaintiff county for the conveyance of the county's swamp lands, in consideration of the erection of certain buildings for the county, but the electors of the county, then few in number, were induced by defendant's grantor to vote for the ratification of the contract by the promise that each of them so voting should receive a deed for 160 acres of the land, to be paid for by them in work on the buildings to be erected, and the buildings never were erected as contemplated in the contract, *held* that the contract was procured by fraud, and that the consideration had failed, and that specific performance could not be decreed.

6. ———: CONTRACT FOUNDED IN FRAUD: FAILURE OF CONSIDERATION: ESTOPPEL BY JUDGMENT AGAINST DELINQUENT. Where there was a contract procured by fraud for the conveyance of plaintiff's swamp lands, and the party to receive the lands failed to perform the conditions on his part, and plaintiff recovered judgment against him for such failure upon the bond which he had given to secure performance on his part, but the relief thus gained was wholly inadequate, but was all that was left for plaintiff, because it had conveyed a portion of the lands to him, and he had reconveyed them to innocent holders, *held* that such judgment, and the fact that plaintiff agreed to accept certain services in satisfaction thereof, (which services also were never fully rendered,) did not estop plaintiff from denying its liability to convey the remainder of the lands included in the contract.

7. **Counties**: SWAMP LANDS: CONTRACT TO CONVEY TO PERSONS PROCUR-
ING PATENTS FOR: ULTRA VIRES. A contract entered into by the officers
of the plaintiff county, whereby the county agreed to convey to certain
parties all the swamp lands in which the county might have an interest,
and to which such persons would procure patents from the government
to the county, and whereby, also, the county was to pay the expenses
incurred in procuring such patents, *held* void for want of authority in
the county to make such contract. *Allen v. Cerro Gordo Co.*, 34 Iowa,
54, distinguished.

### Appeal from Palo Alto District Court.

### Thursday, December 17.

Plaintiff brought this action in equity to quiet the title
to about 2,500 acres of land, which inured to it under the
swamp-land grant. Defendant answered, alleging that in
December, 1859, plaintiff entered into a contract with one
William E. Clark for the sale to him of all its swamp and
overflowed lands; that this contract was submitted to the
electors of the county, and was by them ratified and approved
at an election held in January, 1860; that it was subse-
quently assigned by said Clark to John M. Stockdale; that
the county ratified said assignment, and accepted from Stock-
dale a bond conditioned for the performance by him of the
terms of said contract; and that it subsequently, in 1865,
brought suit on said bond against Stockdale and his sureties
thereon, in which it recovered judgment for $9,760.80 as
damages for the non-performance by him of the conditions
of the contract, and that this judgment was subsequently
paid off and discharged by Stockdale; and he alleges that he
holds the lands in controversy by a conveyance from Stock-
dale, and that the county is barred and estopped by the facts
from now asserting any title or interest therein. He alleges
that on the twenty-ninth of December, 1860, the county, in
pursuance of said contract, executed to Stockdale a convey-
ance of a portion of the lands covered thereby, and that the
lands in question were omitted from said conveyance through
oversight and mistake, and that the claim now asserted by

the county is old and stale, and barred by the statute of limitations. In another division of the answer he alleges that on the third day of June, 1874, he and one W. H. Shea entered into a contract with plaintiff whereby it agreed, in consideration of certain services which they undertook to perform in perfecting the title to the swamp and overflowed lands belonging to it, to convey to them all such lands not included in the conveyance of December 29, 1860, to Stockdale as they should procure to be patented to it; and that they did, in pursuance to this contract, procure the patents for the lands in controversy; and that Shea has conveyed to him all the interest accruing to him therein under said contract; and he asked that his answer be treated as a cross-petition, and that he be adjudged to be the equitable owner of said lands, and that the county be required to execute the conveyances necessary to vest him with the title thereto. Plaintiff filed a reply, in which it alleges that both of the contracts under which defendant claims were obtained by fraud, and that its officers had no authority in law to enter into either of them, or to bind it thereby. The district court entered judgment dismissing plaintiff's petition, and granting defendant the relief demanded in his cross-petition. Plaintiff appeals.

*Soper, Crawford & Carr* and *Phillips & Day*, for appellant.

*Graham & Cady* and *T. W. Harrison*, for appellee.

REED, J.—After appellee had filed his argument, appellant filed an amended abstract, in which some portion of the evidence was more fully set out than was done in the original abstract. Appellee then filed a motion to strike this abstract from the files, on the ground that it was not filed until after his argument was filed; also to strike out the evidence and affirm the judgment, for the reason that it appeared that

1. PRACTICE in supreme court: additional abstract filed after argument closed.

certain items of evidence offered in the district court had not been certified by the trial judge, and were not included in the abstract; and that the certificate of the trial judge does not identify the evidence offered with sufficient certainty; and that all of the evidence offered in the case was not before this court. It was held by this court in *Johnson v. Chicago, R. I. & P. R'y Co.*, 51 Iowa, 25; *Rogers v. Carman*, 54 Id., 715; and *In re Will of Caywood*, 56 Id., 301, that we would not consider the additional abstracts which had been filed without leave by the appellants after the cases had been fully argued by appellees. This ruling was based, however, in each case, on the particular facts of that case, and was not intended as the announcement of a rule of universal application. In each case the additional abstract was filed, either at the time or after the submission of the cause, or so near the time of the submission as to give the other side no opportunity to correct any errors or misstatements which might be contained in it. It is manifest that to permit a party to file an additional abstract under such circumstances would be to give him a great advantage over his adversary, and would lead to great abuses in practice. In the present case, however, the abstract objected to was served on appellee, and filed, some three months before the cause was submitted. He has had every opportunity to examine it and correct any misstatements or errors contained in it, and he has filed an additional argument based in part on the record as made by the additional abstract. The case, therefore, does not come within the reason of the holding of the cases cited. The additional abstract is essential to a fair presentation of the cause, and there is no valid reason for disregarding it. The rules of practice in courts of last resort ought to be framed and interpreted with a view, rather to the submission of causes upon their merits, than to their disposition on merely technical grounds.

II. The certificate of the trial judge shows that defendant offered in evidence a certified copy of the book of original

Palo Alto County v. Harrison.

**2. PRACTICE:** trial of equity cause: offering documents in evidence: how done. entries, so far as the same shows the swamp and overflowed lands in Palo Alto county; also a certified copy of the list of swamp-land selections in the county, showing the date of the selections, the agent by whom selected, date of the patent of such as had been patented, and the date of the rejection of such as had been rejected,—but neither of these documents is contained in the transcript, or set out in the abstract. This omission is one ground of the motion to strike out the evidence and affirm the judgment. The certificate states that the offer to introduce the copy of the book of original entries consisted merely of the bare statement of the offer, but that no certified copy of the book was ever filed in the case, or produced on the trial. As the offer to introduce the copy was made by defendant, it was his business to file it with the evidence in the case, or at least produce it on the trial, that it might be seen and considered by the court in determining the case. As he did neither, the presumption is that he abandoned the offer, or rather, it would be more accurate to say that, as he neither filed the document in the case nor produced it on the trial, he did not offer it in evidence; for his mere oral statement that he offered it, without more, did not amount to an offer to introduce it in evidence. The rule certainly is that all matters introduced in evidence on the trial, or actually offered in evidence in cases triable *de novo* in this court, should be brought up on appeal to this court; and it has frequently been held that we could not try the case anew unless we had all of the evidence before us.

If it should appear, however, from an inspection of the record, that some item of evidence which was irrelevant to any issue in the case, or entirely immaterial, was omitted from it, we would not, on account of such omission, refuse to try the case anew. To warrant us, however, in so trying the cause, the irrelevancy or immateriality of the omitted testimony must be made clearly to appear by the record itself.

**3. PRACTICE** in supreme court: trial de novo: immaterial evidence omitted from record.

The substance of what was shown by the list of swamp-land selections which was offered in evidence, but is omitted from the transcript and abstract, as shown by defendant's statement at the time he made the offer, is set out in the certificate of the trial judge; and it is entirely clear from the statement, we think, that said list is neither relevant nor material. Counsel for appellee have not suggested wherein they claim it is material, nor have they advised us of any object they had in view when they offered it in evidence, or of any legitimate purpose which it serves in the case. They stand on what they claim is the rule in every such case, insisting, in effect, that, as the list was introduced in evidence, the case cannot be tried anew in this court, even though its irrelevancy and immateriality should be apparent. We think, however, that the rule should not be made to work such a result.

III. The other ground of the motion is that the certificate does not identify the evidence with sufficient certainty to enable this court to determine whether we have the same instruments of evidence before us which were introduced on the trial in the district court. The certificate is not attached to the evidence, but it identifies the different instruments of evidence with as much certainty, we think, as is possible under the circumstances. The depositions are identified by giving the names of the witnesses, and the name of the officer by whom they were taken, and by giving the date when they were filed in the case, and the different items of documentary and record evidence are all identified by letters and numbers, or by such references to their date and contents, or to the book and page where recorded, as would enable the clerk in making up the transcript to determine, with reasonable certainty, what was intended. The identification, we think, is as perfect as could reasonably be required in any case. The motion will, therefore, be overruled.

4. PRACTICE: identification of documentary evidence for purposes of appeal.

IV. The contract between Clark and the county was entered into on behalf of the county by the county judge,

5. SPECIFIC performance: conditions of enforcement: contract to convey swamp lands: ratification by electors procured by fraud: failure of consideration.

who, under the laws then in force, was the fiscal agent of the county. By the contract Clark undertook to build at the county seat, for the use and benefit of the county, one two-story brick building, also a one-story brick school-house, and two bridges over the west fork of the Des Moines river, in the county. All of the work was to be completed by the first of December, 1861, and it was to be commenced by the first of April, 1860. The county agreed, in consideration of the doing of this work, to convey to Clark all the lands which had then accrued, or which might thereafter accrue to it, under the swamp-land grant. The contract was submitted to the electors of the county for their approval or rejection at a special election which was called for that purpose. At that time there were not over forty voters in the county, and not more than twenty-five votes were cast at said election, all of which, except three, were in favor of approving the contract. Clark afterwards assigned the contract to Stockdale, who executed to the county a bond in the penalty of $75,000, conditioned for the performance of Clark's undertakings in the contract. In December, 1869, the county judge executed to Stockdale a conveyance of about 74,000 acres of land. No part of this land had then been patented to the county, but over 50,000 acres of it was subsequently patented as swamp and overflowed land. When said conveyance was executed, no part of the work on said buildings and bridges had been performed. Stockdale, however, proceeded afterwards with the work on the buildings. The two-story building was put in such condition as that the county was able to occupy and use it as a court-house and for county offices, but it never was completed, and the school-house was never put in a condition to be occupied or used for the purpose for which it was erected, and nothing at all was ever done towards the erection of the two bridges. In 1865 the county brought suit on the bond, and recovered judgment against Stockdale and his sureties for

$9,760.80 as damages for the non-performance of the contract. This judgment was subsequently compromised, Stockdale agreeing to convey to the county two squares of ground in the town-site of Paoli, and to erect a court-house for the county in satisfaction of the judgment. He executed the conveyances, and erected a building, which the county occupied and used as a court-house for three or four years, but he never completed it.

It is alleged in the reply that the execution of the contract by the county judge, and its approval by the electors, was procured by bribery and corruption. The evidence shows that, before the election at which the question whether the contract should be approved was voted on, Stockdale, who was then acting as agent for Clark in the matter, promised the electors that, in case the contract was ratified, each voter in the county should have the opportunity to acquire 160 acres of the land, and to pay for the same in labor on the improvements which were to be made for the county under the contract. This promise was made for the purpose of inducing the electors to vote for the approval of the contract, and it undoubtedly had that effect. He subsequently made conveyances of portions of the land to residents of the county. In some instances the parties to whom the conveyances were made performed labor in payment for the land, and in others no consideration was paid for the conveyances. Other objections are urged against said contract, but in the view we take of the case it is unnecessary to set them out. Defendant's cross-petition is in the nature of a bill to enforce a specific performance of the contract by the county. The general rule is that courts of equity will decree the specific performance of a contract to convey real estate when the contract is in writing, is certain and fair in all its parts, and was fairly entered into, and is for an adequate consideration, and is capable of being performed. 1 Story, Eq. Jur., § 751.

It is well settled, however, that "the specific execution of a contract in equity is a matter not of absolute right in the party, but of sound discretion in the court," and a specific performance will not be decreed when the contract is founded in fraud, imposition, mistake, or undue advantage, or is not supported by an adequate consideration. 1 Story, Eq. Jur., § § 742, 750, 769. See, also, *Mechanics' Bank of Alexandria v. Lynn*, 1 Pet., 376; *Cathcart v. Robinson*, 5 Id., 264; *Taylor v. Longworth*, 14 Id., 172.

Whatever rights defendant has under the Clark contract were acquired under a quitclaim deed from Stockdale. Conceding that this conveyance operated to transfer to him all of the rights acquired by Stockdale under the contract, it is clear that he acquired no greater interest in the subject than Stockdale possessed; and it is manifest, we think, that there is no equitable ground upon which he could have demanded the specific enforcement of the agreement. Under the statute in force at the time, the favorable vote of the electors of the county was essential to the validity of the contract. The question which the electors were called upon to determine was one of public concern, and should have been determined solely upon considerations of public interest. By Stockdale's management, however, it was made a matter of mere private concern to the voters, and they were induced to determine the question with reference solely to their own private interests. The contract, then, was founded in fraud. It was never fairly entered into by the county. In addition to this, the county has never received the benefits for which it contracted. Stockdale has never, in good faith, performed the undertakings of the agreement. As he procured the contract to be ratified by fraudulent means, and has not performed its conditions, a court of equity will not lend him its aid in enforcing it.

V. It is insisted, however, that, as the county instituted suit on the bond, and recovered judgment for the damages it sustained in consequence of his non-performance of the

6. ——: con-
tract founded
in fraud:
failure of con-
sideration :
estoppel by
judgment
against delin-
quent.

contract, and accepted what he paid in satis-
faction of the judgment, it is now estopped
from denying the validity of the contract, or from
asserting that it has not received its full consid-
eration.

There are two satisfactory answers to this proposition: (1)
Stockdale has never fully performed the agreement upon
which the judgment was satisfied. He has never completed
the court-house which he agreed to build for the county in
part satisfaction of the judgment. (2) Before the action on
the bond was instituted he had conveyed to third parties
nearly all of the lands included in the deed from the county
to him. The county, therefore, had no adequate remedy
against him, except by an action upon the bond for the dam-
ages sustained by it in consequence of his failure to perform
the contract. It might, it is true, have maintained an action
in equity for the annulment of the conveyance, but this
would have afforded it no remedy as to the lands which he
had conveyed away. He compelled it, then, to either seek a
remedy against his wrongful acts by an action on the bond,
or to go without remedy therefor; and he should not be per-
mitted to assert that, by adopting the remedy which he com-
pels it to adopt, it estopped itself from setting up its equita-
ble defense against the claim that is here made. To hold
otherwise would be to permit him to profit by his own
wrong.

VI. The remaining question in the case is whether
defendant is entitled to judgment enforcing the conveyance
of the property under the contract between him

7. COUNTIES:
swamp lands:
contract to
convey to
persons pro-
curing
patents for :
void.

and Shea and the county. That contract is as
follows: " The swamp and overflowed lands in
Palo Alto county, Iowa, being in an unsettled
condition, large quantities having been selected
as swamp and overflowed land and never patented as such, ·
and, on account of such unsettled conditon of said lands,
said county has been at a great loss from year to year of

revenue and taxes on said lands, and has had to refund large sums of money on said lands because the same were unpatented and improperly taxed and sold for taxes; and the county is in great danger of losing large sums of money from year to year in the future on account of the unsettled condition of said lands; and said county desires to have the question as to whether said lands are swamp or overflowed lands, or high lands, settled as soon as possible, that they may become taxable, and the county derive revenue and taxes therefrom,—W. H. Shea and T. W. Harrison are authorized and required to investigate the condition of said lands, and as soon as possible procure the patenting of such as are swamp or overflowed lands, and the cancellation of the swamp claim upon such as are dry lands; said county to pay to said W. H. Shea and T. W. Harrison the actual expenses as to all said lands that may be decided to be dry, not to exceed in any event fifty dollars, in county warrants; and if any settler desires to include homestead lands, they to pay their proportion of the expense; and said W. H. Shea and T. W. Harrison are to pay the actual expenses as to all said lands that shall be patented as swamp or overflowed lands, and said Palo Alto county shall convey and quitclaim to said W. H. Shea and T. W. Harrison all the swamp and overflowed lands in said county patented as such, which are not described in the deed therefor made by said county to John M. Stockdale, as recorded in Deed-book 'A,' on pages 36–61, inclusive, of the records of said Palo Alto county; said conveyance to be made, by specific description of the lands to said W. H. Shea and T. W. Harrison upon demand of said W. H. Shea and T. W. Harrison, and production of proof that said lands have been patented as swamp or overflowed lands; and said W. H. Shea and T. W. Harrison shall hold said county harmless from any claim of said John M. Stockdale to any of said lands which are not described in said deed, as recorded on pages 36–61, inclusive, of Deed-book 'A' of the records of said county." It is alleged in the

reply that the board of supervisors never assented to this con-
tract; that three members of said board signed it, but that
their signatures were obtained by fraud and misrepresenta-
tion by defendant as to the contents of the instrument, and
the board rescinded the agreement as soon as this fraud was
discovered; also that the contract is void for the reason that
the board of supervisors had no power to appropriate the
swamp and overflowed lands of the county to the object to
which they attempted to appropriate them by said contract.

In the view we take of this last question, it will be unnec-
essary to go into the questions made by the reply with refer-
ence to the execution of the contract. The undertaking of
Shea and defendant in the agreement is that they will exam-
ine the condition of the lands which had been selected as
swamp and overflowed lands, and procure the patenting of
such swamp lands as had not been patented, and the cancel-
lation of the swamp claim upon such as were dry. As com-
pensation for these services, the county agreed to convey to
them all lands which had been or which might be patented
to it, and which were not included in the deed to Stockdale;
and, in addition thereto, to pay them their actual expenses in
procuring the cancellation of the swamp-land claim on such
lands as should be found to be dry. The county had no
interest in any of the lands, except such as were to inure to
defendant and Shea under the contract. The only benefit or
advantage which it could gain from the contract was the tax-
ation in the future of such lands as had been selected as
swamp, but which were then not taxable by reason of the fact
that the swamp claim had not yet been determined. This is
named as the consideration which induced it to enter into the
contract. In effect, the contract appropriates all of the
swamp lands belonging to the county as compensation for
such services as should be rendered in procuring the patent-
ing of the portion not yet patented. It is apparent that no
interest of the county in the lands could be protected by this
contract. Stockdale or his grantees might be benefited by

the services which defendant and Shea might render under it; but as all the lands in which the county had any interest were to be appropriated in payment for the services, it is apparent that it could derive no immediate benefit from it. The board of supervisors had no power to appropriate the land to that object.

The objects to which the counties may appropriate the swamp lands within their borders are defined by the statute under which the lands were granted by the state to the counties, and the subsequent legislation on the subject; and it was held by this court in *Allen v. Cerro Gordo Co.*, 34 Iowa, 54, that as an incident of their ownership of the property they had the power to do whatever, in the judgment of their officers, was necessary for the protection of their interest therein, and the perfecting of their title thereto. But the contract in question is clearly not within the principle of that decision. We think it clear that defendant is not entitled to a judgment for the specific performance of either of said contracts in question. The judgment of the district court will be reversed, and the cause will be remanded, with directions to enter a judgment dismissing defendant's cross-petition, and quieting plaintiff's title to the property; or, at plaintiff's election, such judgment will be entered in this court.

REVERSED.