JEORGEN JOHNSON, Appellee, v. INCORPORATED TOWN OF REMSEN et al., Appellants; IOWA PUBLIC SERVICE COMPANY, Intervenor.

No. 41781.

1034

MARCH 14, 1933.

C. Van de Steeg and Stipp, Perry, Bannister & Starzinger, for appellant.

Te Paske & Te Paske, for appellee.

Fred H. Free and Price & Burnquist, for intervenor.

STEVENS, J.—A special election was held in the town of Remsen on September 3, 1931, at which the electors voted upon a proposition to establish and erect a municipal electric light and power plant. The proposal carried by a vote of 456 to 130. Notice for bids for the construction of the plant was published and several bids were received. All of the bids exceeded the amount authorized by the voters at the special election, and they were accordingly rejected. The certified checks received from the respective bidders were not, however, immediately returned to them. Subsequent negotiations resulted in a contract between the town and Electric Equipment Company, one of the bidders, for $66,842, which was considerably less than the lowest bid received and was within the sum which the town was authorized to spend. All necessary further proceedings were had by the council. Due notice was published in a local paper of a hearing on the consideration and adoption of the plans and specifications furnished for the plant. Objections by numerous resident voters of the town were filed to the plans and specifications and to the immediate construction of the plant. The objections were overruled by the town council; thereupon the objectors gave notice of appeal to the budget director. The matter was heard on appeal by the budget director who sustained the town council in all particulars. The decision of the budget director was announced on January 15, 1932, three days after the appeal was heard, and on the 16th day of the same month a contract was entered into with the equipment company for the construction of the plant for the price above named. A few days later, the budget director entered his approval of the contract in writing thereon. The petition in this action was filed February 5, 1932. The plaintiff is a resident and taxpayer of the defendant town. The grounds alleged upon which appellee Johnson prayed that the town council be enjoined from carrying out the contract with the Electric Equipment Company and in issuing and selling bonds was that the said contract was entered into without first advertising for and receiving competitive bids for the construction and equipment of the plant and because of fraud and other irregularities in the proceedings. The court found, and decree was accordingly entered, that the election was valid, and that the town was authorized to issue and sell bonds, but that the contract entered into with the Electric Equipment Company was void for want of proper notice to bidders and because same was let without competitive bids. The appeal of the town is from that portion

of the decree which enjoins the carrying out of the contract between the town and the Electric Equipment Company. The intervenor appeals from the finding and decree of the court adjudging that there was no fraud shown in the election and that the bonds were legally issued and sold. The contract for the sale of the bonds was rescinded during the trial, and no further consideration need be given thereto.

The questions presented by the two appeals will be discussed and disposed of together.

It is provided by section 352 of the Code of 1931 that before any municipality shall enter into any contract for a public improvement to cost in excess of $5,000 such municipality shall adopt proposed plans and specifications, together with a proposed form of contract fixing a time and place for hearing and give notice thereof by publication in at least one newspaper of general circulation in such municipality. Any person may appear and file objections to the proposals, and such objections shall be heard by the proper officers of the municipality. Section 353. It is provided by the succeeding section that the objectors, if their objections be not sustained, may appeal to the budget director by serving notice of such appeal on the clerk or secretary of the municipality. It then becomes the duty of the budget director to fix a time and place for a hearing upon such appeal. Section 356, Code 1931. Section 357 is as follows:

"At such hearing, the appellants and any other interested person may appear and be heard. The director shall examine, with the aid of competent assistants, the entire record, and if the director shall find that the form of contract is suitable for the improvement proposed and that such improvements can be made within the estimates therefor, the director shall approve the same. Otherwise the director shall recommend such modifications of the plans, specifications, or contract, as in his judgment shall be for the public benefit, and if such modifications are so made, the director shall approve the same.

"The director shall certify his decision to the body proposing to enter into such contract, whereupon the municipality shall advertise for bids and let the contract subject to the approval of the director who shall at once render his final decision thereon and transmit the same to the municipality."

The provision of the foregoing section is the only one in the

chapter in which this section appears, which is chapter 23 of the Code of 1931, requiring notice to bidders. That a notice which in form and substance met all the requirements of the statute was, in fact, published in pursuance of an order of the town council, is not in any way questioned. It is, however, contended that the notice was published prior to the hearing on the appeal before the budget director, and that each and all of the bids were rejected. The question at this point, therefore, is, first, whether the publication of the notice was timely; and, second, whether the action of the town council rejecting the bids received precluded further negotiations with the bidders and the letting of a contract to one of them at a price considerably lower than the lowest bid received.

■ Authority is conferred upon cities and towns to purchase, establish, erect, and maintain electric light and power plants by section 6127 of the Code of 1931. No question is here involved as to the power and authority conferred by the foregoing section upon municipalities to do the things contemplated in the present instance. We have therefore only to deal with matters of procedure. It will be at once observed that no notice to bidders is required by any of the provisions of section 357 of the Code or of the chapter of which it is a part, unless and until the budget director in case of appeal has certified his final decision to the municipality. The provision of the statute requiring notice to be given as a part of the procedure to be observed is mandatory. It cannot be construed otherwise. What is the effect of this mandatory requirement?

We said in Hawkeye Lumber Company v. Board of Review, 161 Iowa 504, 143 N. W. 563, 565, that:

"Ordinarily statutes which are for the guidance of officers in the conduct of business devolving upon them, designed to secure order, system, and dispatch in the proceedings, and in the disregard of which the rights of persons interested cannot be injuriously affected, are held to be directory. * * * If, however, the language of such a statute is accompanied by negative words importing that the act or acts required shall not be done in a manner or at a time other than that prescribed, it must be construed as mandatory."

The statute under discussion contains no specific negative terms. If it contains a prohibition against letting contracts of the character involved without first receiving competitive bids and requiring the contract to be let to the lowest responsible bidder, it arises by impli-

cation only. We said in City of Des Moines v. Gilchrist et al., 67 Iowa 210, 25 N. W. 136, 137, 56 Am. Rep. 341:

"It is a general principle of the law that the specific designation of the manner of exercising a power granted operates as a limitation upon the general power conferred; or, as is said in the case of City of Keokuk v. Scroggs, 39 Iowa 447: 'When a thing is directed to be done through certain means or in a particular manner, there is implied an inhibition upon doing it through other means or in a different manner.' In Pye v. Peterson, 45 Tex. 312, 23 Am. Rep. 608, it was held that a city cannot, without express authority in either its charter, or by its statute, establish fire limits and declare wooden buildings within such limits to be nuisances."

The reason for the omission by the legislature from the statute of any requirement that contracts for the erection of projects of the character involved without the municipality first advertising for and receiving competitive bids, unless appeal is taken to the budget director, is not readily apparent. It may have been the thought of the legislature that, if no objections were filed to the proposal or appeal taken to the budget director, general acquiescence of the citizens would be presumed, and that competitive bidding would serve no useful purpose.

Municipalities are, by the terms and provisions of section 352, prohibited from entering into any contract for any public improvement to cost in excess of $5,000 without having adopted plans and specifications and a proposed form of contract for submission upon due notice to the public for consideration. The succeeding section provides that any person may appear at the time fixed for such hearing and file objections to the proposal. If desired, any person interested may appeal from the decision of the governing body of the municipality to the budget director. This procedure serves to fully advise the citizens of the municipality of the exact proposal, and affords them an opportunity to be heard both by the governing body and on appeal by the budget director. The notice to bidders, which was in due form and which was published as required by law, was given prior to November 23d, the date fixed for the receipt of bids. Objections were filed and heard by the council and rejected on December 8, 1931. Thereupon notice of appeal to the budget director was given. The director sustained the council in all particulars, and, after his final decision was certified to the council, he

gave his approval to the contract by written indorsement thereon.

As to the first proposition to be discussed, we are quite firm in our conviction that the publication of the notice to bidders and the receipt and opening of bids prior to the final decision of the budget director was a mere irregularity, and that the contract entered into is not void because thereof. This question would seem to be set at rest by our prior decisions. Taylor v. McFadden, 84 Iowa 262, 50 N. W. 1070; Dishon v. Smith, 10 Iowa 212; Easton v. Savery, 44 Iowa 654; Parish v. Elwell, 46 Iowa 162.

The approval of the contract by the budget director was in no sense preliminary, but was intended to be and was, in fact, final.

The remaining question as to whether the contract entered into in the manner indicated is valid is far more troublesome. Courts in other jurisdictions are divided in their opinions as to whether a contract may be validly let to a bidder at a lower figure than that proposed as the result of private negotiations with such bidder.

The Supreme Court of South Carolina sustained a contract thus procured in Dillingham v. City Council of Spartanburg, 75 S. C. 549, 56 S. E. 381, 8 L. R. A. (N. S.) 412, 117 Am. St. Rep. 917, 9 Ann. Cas. 829. The Supreme Court of Kansas in Warner v. City of Independence, 121 Kan. 551, 247 P. 871, arrived at a similar conclusion in a case in which the contract was let to the lowest responsible bidder at a lower figure than that proposed after some negotiations were had.

The Supreme Court of Pennsylvania in Louchheim v. Philadelphia, 218 Pa. 100, 66 A. 1121, reached the opposite conclusion. This court is here confronted with a somewhat ambiguous statute. First, competitive bids are not, in terms at least, required if no objections to the proposal are filed and no appeal taken to the budget director. If, however, an appeal has been taken, a mandatory duty is placed upon the governing body of the municipality to advertise for bids. It is important to note in this connection that no part of the cost of the proposed improvement may be levied against private property. None of the parties to this action were bidders. No possible prejudice resulted to any taxpayer by the reduction in price at which the contract was let. The purpose of statutes requiring submission of proposals to competitive bidding is in part at least to obviate, as far as may be, the possibility of fraud or collusion in the letting of such contracts. Johnson County Savings Bank v.

1040

Creston, 212 Iowa 929, 231 N. W. 705, 237 N. W. 507. This purpose is a wholesome one, and should, in the interest of the public, be closely guarded and carefully upheld. There is no charge of fraud or bad faith upon the part of the town council in this case. The mere tentative rejection of the bids by the council should not be held to alone invalidate the contract. As already stated, the statute contains no mandatory provision requiring contracts of the character in question to be let to the lowest responsible bidder. The implication that might otherwise arise, is, we think, negatived by the duty imposed upon the budget director to approve the contract. The approval of this disinterested officer apparently was deemed by the legislature sufficient, and rendered unnecessary a negative provision in the statute prohibiting the letting of contracts to any one except the lowest responsible bidder. It is our conclusion that strict technical observance of the time fixed for giving notice to bidders is not required, and that there was substantial compliance with the statute both in this respect and in letting the contract.

II. It is one of the contentions of intervenor that there was such fraud in the election as to vitiate it. This contention is rested upon certain alleged public and private utterances of the mayor and certain members of the town council while the propositions submitted were pending and prior to the date on which the special election was held. The substance of the alleged fraudulent representations of the officers referred to was that it was not the intention of the council, if the proposition to erect the plant carried, to proceed at once to let a contract therefor, that they desired a favorable result so as to coerce intervenor into selling their equipment in Remsen or reducing the rates charged for their products, and that no bonds would be issued. The sum and substance of the evidence fairly considered on both sides as a whole is that there was some talk on the part of the municipal officers that they intended to negotiate with intervenor for cheaper rates or for the purchase of their equipment. There was no direct statement or promise that the proposal to erect the electric light and power plant would in any event be deferred, or that no bonds would be issued. Apparently the main difference between the citizens is as to whether the plant be erected presently or at some later time. This is evidenced, to some extent, by the objections to the construction of the plant which were filed in the office of the city clerk. These objections were signed by 131 citizens of the town of Remsen. No

charge of fraud is contained therein. The statement, in part, is: "We were informed before the September 3d election that it was not the intention of the mayor and council to build an electric light and power plant immediately." The signers of these objections pledged their support to the enterprise in four years from the date thereof. The objections obviously represent the good faith sentiment of a minority of the citizens of appellant municipality that, owing to conditions and for other reasons, the construction of the plant should be deferred until a later date. This honest difference of opinion between the citizens was neither unnatural nor unusual. Testimony was introduced tending to show that the municipal officers were active in support of the proposition prior to the election, and that a full-page advertisement was published in the local paper. It appears that this advertisement was paid for by the town, and that other expenses of the campaign were paid thereby. The legality of this action is not here involved. Unless in violation of sections 8405 and 13265 of the Code of 1931, these acts did not constitute fraud, notwithstanding the election. A reading of the foregoing sections will disclose that they are not applicable to the facts of this case. The proposal submitted at the special election was carried by a large majority. The proposal submitted could not well have been misunderstood by any one, and we are not inclined to the belief that there was such fraud or misrepresentation on the part of any one as to invalidate the election. We deem it unnecessary to recite or review the testimony bearing in detail thereon. A careful reading of the cases cited by intervenor will suggest at once that they are readily distinguishable from the case at bar. Starr & Rand v. Board of Supervisors, 22 Iowa 491; Carrothers v. Russell, 53 Iowa 346, 5 N. W. 499, 36 Am. Rep. 222; Palo Alto County v. Harrison, 68 Iowa 81, 26 N. W. 16; Chicago, Milwaukee & St. Paul R. Co. v. Shea, 67 Iowa 728, 25 N. W. 901.

III. It is also contended by intervenor that the ballot furnished the voters at the election was invalid as to form. The proposition submitted was in the following language: "Shall the following public measure be adopted: Shall the incorporated town of Remsen, Plymouth county, Iowa, purchase, establish, erect and extend within or without its corporate limits, electric light or power plant * * * ?"

The ground of the claimed invalidity of the ballot is the inclusion therein of the word "extend." It is the thought of intervenor

that the establishment and erection of a light and power plant and the extension thereof are two separate and distinct matters; that the ballot is bad for "duality." We deem it unnecessary to determine what would be the effect upon the ballot if there had been an existing electric light and power plant in the appellant town. There was no such plant. The inclusion of the word "extend" could have misled no one. There was nothing to extend. The facts of this case are somewhat similar to those existing in Iowa Service Co. v. Villisca, 203 Iowa 610, 213 N. W. 401, at least to the extent that the court therein gave emphasis to the fact that the omission of the word "purchase" from the petition for the election was not fatal for the reason that there was no plant in the town of Villisca that could be prejudiced.

Intervenor relies upon Brown v. Carl, 111 Iowa 608, 82 N. W. 1033, and Muscatine L. Co. v. Muscatine, 205 Iowa 82, 217 N. W. 468, and other similar cases. It is apparent from the statement of facts in the cited cases that the form of the ballot considered therein was calculated to mislead the voters. These cases are not quite in point. The voters in this case must have understood that the proposal upon which they were asked to vote was the establishment and erection only of a light and power plant. Under the facts herein, nothing else could have been contemplated. It is our conclusion that the election was validly held and that the contract entered into by appellant with the Electric Equipment Company is not void either because notice to bidders was prematurely published or for the reason that the bids were at first rejected and a contract ultimately let to a bidder after negotiation therewith which resulted in a saving of expense to appellant and brought the consideration within the authorized cost. The proceeding was irregular but not in violation of a mandatory statute, and was without prejudice to any one.

It follows that, in so far as the judgment and decree is adverse to appellant, it should be reversed; otherwise in all respects affirmed. —Reversed on defendant's appeal; affirmed on intervenor's appeal.

KINDIG, C. J., and ANDERSON, KINTZINGER, and MITCHELL, JJ., concur.