HENRY G. SHELBY, Executor of the Estate of P. M. CRAPO, Deceased, Appellant, v. CITY OF BURLINGTON, ET AL., Appellees.

**Street improvement:** PAYMENT OF COST: STATUTES. Code, sections 751, 782, and 832 confer upon a city power to improve, grade, and repair streets, and to pay the expense out of the general fund, or the grading fund if it was grading, or the improvement fund if it was repairs.

**Street improvement:** EXERCISE OF AUTHORITY. An ordinance is not necessary to authorize payment for the improvement of a particular street out of the general fund, under Code, section 751, but it may be done under a resolution.

**Same.** A certain ordinance of defendant city relating to the improvement of streets and payment of the expense, is held not to have committed the city to the policy of payment only by special assessment.

**Street improvement:** ORDINANCES. Appropriation ordinances may be amended at any time before payment to meet the expense of a particular street improvement out of the general fund.

**Change of grade:** WHO MAY COMPLAIN: EVIDENCE. Where a city has the authority to improve a street and pay the expense from the general fund, one interested simply as a tax payer, who, with knowledge of the improvement, makes no objection thereto as the work progresses, cannot afterward complain of a change in the grade. Moreover, in the instant case, the evidence does not show a change in grade.

**Street improvement:** AGREEMENT OF PARTIES: PAYMENT OF COST. Where the city and abutting owners agree upon the manner and payment of the expense of a street improvement, there is no necessity for a statutory appraisement of the damage, and a general taxpayer cannot complain, although the cost is to be paid out of the general fund.

*Appeal from Des Moines District Court.*— HON. W. S. WITHROW, Judge.

MONDAY, OCTOBER 24, 1904.

SUIT in equity to enjoin the defendants, the city and its officers, from improving a street at the expense of the city, from paying for the same out of the general fund; from constructing the improvement below the established grade; from using any warrants for paying the expenses of the improvement, and for other equitable relief.   The trial court denied the prayer of the petition, and plaintiff appeals.— *Affirmed.*

*A. M. Antrobus,* for appellant.

*La Monte Cowles,* for appellees.

DEEMER, C. J.— In the year 1902 the city council of the defendant city by resolution decided to repair or improve what is known as " Columbia Street."   This resolution was to the effect that the street commissioner repair the street from Fourth to Seventh streets, according to plans in the city engineer's office, and according to his directions.   These plans showed that the street was originally eighty feet wide, fifty-six of which had been improved by being guttered and macadamized.   Under the city engineer's plans the traveled part of the street was to be reduced to thirty and thirty-four feet, instead of fifty-six.   As originally improved, the street was not level, but, being on a side hill, it inclined quite a little from one side to the other, and on account thereof, and of the poor guttering, had washed out, and become very rough and uneven.   By the city engineer's plans, the street was to be made level, which would necessitate a cut on the north side of from six to more than twenty-four inches in front of some of the abutting property.   On the south side there were to be fills and cuts, the fills to be from nine inches down to nothing, and the cuts from eleven down to nothing. While these cuts and fills were to be made, there were to be twelve inches of macadam laid on the street, which would reduce the actual cuts by that amount, and also increase the fills on the south side of the street.   In order to avoid difficulties with the property owners on the north side of the

street, where the heaviest cuts were to be made, it was agreed between them and the city council that they, the property owners, should pay in proportion to front footage for a cement curb and gutter at the rate of fifty-five cents per running foot; the work to be done according to the plans of the city engineer; and that no change other than that shown on the engineer's blue print should be made in the grade of the street. It was also contemplated and agreed that the old macadam on the street, to the extent necessary to do the requisite grading, should be removed, and afterward replaced so far as practicable, and the macadam so left as to be twelve inches, more or less, in thickness after being properly rolled. The property owners were, as we have said, to pay for a cement curb and gutter, and to waive all claims for damages, and the city was to pay all other expenses out of the general fund. It seems that the grade of this street was fixed by two ordinances, one passed in the year 1854, and the other in the year 1859; and that it was macadamized, curbed, and guttered in accordance with this grade, and the cost thereof assessed against abutting property owners.

Under the resolution of the city council the improvement of the street was commenced, and the work was nearly completed when this action was commenced, and the property owners had paid for the cement curb and gutter according to their agreement. In the year 1898 the city proposed a plan for the improvement of this street which was very objectionable to the property owners, in that it involved cutting down the entire surface of the street and lowering the sidewalk grade in such a manner as to greatly damage and injure them. The plan under which it was finally improved was the result of a compromise, to which, as we understand it, Mr. Crapo, whom plaintiff represents, assented. It comprehended the flattening of the transverse line of the street, the narrowing of the macadamized portion to an average of about thirty-two feet; the widening of the parking to an average of about twenty-three feet, with no disturbance of

the sidewalks or the surface of the ground at the lot lines, and no interference with the means of ingress or egress to the properties on the north side of the street. Plaintiff brought this action to restrain the city from paying any part of the cost of the improvement out of the general funds of the city. He did not own any property on Columbia street, nor does it appear that he has ever been specially assessed for street improvements in front of his property. The action was tried in the lower court before his death, and on the witness stand he practically conceded that he had no objection whatever to the manner of the improvement of Columbia street, but that he did object to the city's paying for it out of the general fund. There can be no doubt, under the evidence, that he knew of the agreement with the abutting property owners, and that he saw the work as it was being done, and made no objection thereto. He did appear, however, before the city council, and objected to paying any part of the expense thereof out of the general fund. In commencing this suit he alleged that the improvement of the street was in no sense the repair of the original improvement; that the improvement was a reconstruction of the street, the cost of which, under the laws of the State and the ordinances of the city, should be assessed against the abutting property; that the improvement, when completed, would be below the established grade; that the city had no authority to so improve any street, and to pay for the same out of any of its revenues; and that in no event could the city pay for this improvement out of its general funds.

On this appeal plaintiff's counsel frankly concede that, if the work is one of repair, rather than of reconstruction, he has no case. But he contends that the work was of reconstruction, and that under the law and the ordinances of the city there is and was no authority for paying the expense thereof out of the general funds. He further contends that the city had no power or authority to make the improvement below the established grade, and to charge the expense thereof

to the general taxpayers; that it could not change the grade except by ordinance; and that there was no ordinance changing the grade from that established by the ordinances of 1854 and 1859. He further argues that the abutting property owners could not make an agreement with the city, with reference to change in grade, which would bind the general taxpayers. Further claim is made that the work was not let to the lowest bidder, but, as that issue was not made by the pleadings, we shall not consider it. Lastly, he claims that, as the city has made some street improvements at the expense of abutting property owners, that fixed its policy, and that it could not thereafter improve, and pay the expense thereof out of the general funds. These are all the points made by appellant, and to such of them as seem worthy we shall now turn our attention.

I.    Under the law in force when the resolution in this case was passed and the contract let, cities had power to improve and repair streets, and it was provided that the expense of such repairs and improvements might be paid out of the general funds of the city. Code, section 751. They also had power to establish grades and to provide for the grading of streets to be paid from the general fund or the grading fund. Section 782. And it was also provided that the repair of any street improvement might be paid from the city improvement fund or from the general revenues of the city. Section 832. Under these sections it is clear that the city had the right to improve, grade, or repair streets, and to pay the expense thereof out of the general fund; the grading fund, if it were grading; or the improvement fund, if it were repairs. Recognizing the force of this, appellant's counsel say that the city could not exercise the power by resolution; and that, in any event, it had elected by the passage of an ordinance not to pay out of the general fund, or in any other manner than by assessing the cost thereof to abutting property owners. Reliance is placed upon these quotations from the ordinances

1. STREET IM-
PROVEMENT:
payment of
cost; statutes.

of the city: "All expenditures from the general fund shall be designated by ordinance." "The general fund, in addition to such purposes as may by ordinance be designated from time to time, shall be used for * * * salaries of officers, * * * expense of fire department, * * * repairs of streets, alleys and public grounds: * * * provided that repairs made under contract shall require a special appropriation * * * for incidental current expenses, including repairs, * * * and all current expenses not otherwise provided for, * * * for expenses of police court." Another ordinance, known as "No. 50," gave the city the control of streets and highways, and provided that: "Whenever the city council shall deem it advisable or necessary to make or construct any permanent improvement or sewer in or on any street, alley, lane, highway or avenue, by improving, paving, curbing, guttering, gravelling, or macadamizing, or any reconstruction of any street improvement, or sewer, it shall in a proposed resolution declare the necessity or advisability, stating in said resolution the kind of material used and the method of construction, and whether abutting property will be assessed." The ordinance further provided in another section that the cost except at street intersections, etc., might be assessed against the abutting property, in proportion to the lineal front feet fronting thereon. Another section provided for paying for grading out of the grading fund.

The argument, as we understand it, is that, while the city might, under section 751 *et seq.* of the Code, at its option, have made the improvement in question, and paid for it out of the general fund, yet it could only do so by ordinance; and that, having passed the ordinances to which we have just referred, it evinced an election to tax the expense of such improvements against the abutting property; and that the resolution in this matter was and is of no validity. The first question which arises in this connection is the necessity of a formal

2. STREET IM-
PROVEMENT:
exercise of
authority.

ordinance for the improvement and repair of a street.   Is such action necessary before a particular street may be improved or repaired?  We think not.   The Legislature having given the power, and there being no purpose of assessing the cost against abutting property, we think the act is so largely ministerial in character, so evidently intended for the special occasion, so largely declaratory simply of the will of the corporation, that the act need not be evidenced by a formal ordinance.   A resolution, duly passed, is in itself sufficient. There was no thought of adopting a permanent policy in passing this resolution.   It had reference to a special situation, and was declaratory of the will of the city council in a given matter, and was largely ministerial in character.   It was simply a carrying out in the particular instance of a power expressly granted by the Legislature, and was in no sense legislative in character.   In such cases an ordinance is not generally necessary.   *Chicago & N. P. R. Co. v. Chicago,* 174 Ill. 439 (51 N. E. Rep. 596) ; *State v. Jersey City,* 27 N. J. Law, 493; *Citizens' Gas Co. v. Elwood,* 114 Ind. 336 (16 N. E. Rep. 624) ; *Alma v. Guaranty Co.,* 19 U. S. App. 622 (60 Fed. 203, 8 C. C. A. 564).   See, also, *Cascaden v. Waterloo,* 106 Iowa, 673, where all our previous cases are reviewed.

Ordinance No. 50, to which we have referred, does not commit the city to the policy of special assessments in all cases.   That matter is expressly left open, by the ordinance itself, for settlement when the particular improvement is to be made.   Moreover, this ordinance in itself gives the city the advantages of all statutes with reference to street improvements, if any such were necessary, and provides that the particular improvement may be made by resolution, which shall state whether or not the abutting property is to be assessed.

3. Same.

As to the appropriation ordinances, these may at any time before payment be amended, if necessary, to meet the expenses of this improvement.   When the action was brought,

the time for payment had not arrived, and there was no

**4. STREET IM-** threat to pay contrary to the appropriation or-
**PROVEMENT:**
**ordinances.** dinances. The city could proceed with its work under the resolution, and plaintiff could not stop it, for the reason that there was no appropriation ordinance authorizing the payment of the money for the work. We do not care to go into the question as to whether the work was repair or reconstruction. Whatever else it may have been, it was certainly an improvement of the street, which the city had the right to make; and, as it was doing it under a valid resolution, plaintiff had no right to interfere on this ground.

II. As to the change in the grade of the street, plaintiff knew all about the proposed improvement, consented to it, and stood by without objection as the work progressed. He

**5. CHANGE OF** is hardly in position to make any complaint on
**GRADE: who** this score. But we find the old ordinances
**may complain;**
**evidence.** which purport to establish the grade decidedly incomplete and unsatisfactory. One fixes it at so many feet in the center of the street from a certain datum line; and the other " as approved by the city council by laying curbing and guttering along the street." Just where these lines were is not shown. True, we know what the natural surface of the ground was when this improvement was projected from the engineer's blue prints, but we do not know where the grade lines are as established by these grade ordinances. Defendant, in its answer, admits a change of grade on the north line of the street, but plaintiff, in his petition, concedes that there was to be practically no change on the south side. All agree there was no actual change at the lot lines, the sidewalk line, or in the parking, as we understand it. The truth, as we gather it, is that the city endeavored to level up the street by flattening it out. This it had a right to do under the ordinance of 1859, which was the last one on the subject, and which fixed the grade at the center of the street only. When so fixed, if a grade at all, it must fix the curb grades by relation with reference to

approved methods of street construction.   That is to say, the street should be nearly level transversely; and, so long as the center is not changed, and there is no departure from approved methods of street improvement, property owners may not complain.   There is absolutely no showing that the grade in the center of the street has been changed in the slightest particular.   The last ordinance is the one to which we must, of course, refer, as that *ipso facto* repealed the former one.   Moreover, there is no showing as to where the curbing and guttering was which is referred to in the ordinance of 1854.   So that there is no evidence of any material change in the established grade.

But, suppose there was a cutting down of the north side of the street in order to make it level transversely, who may complain of it?   Surely not a general taxpayer, who knew of and assented to it.   The city had the right to grade and to pay the cost thereof either out of the grading or the general fund.   It also had the right to macadamize the street, and to either specially assess the cost thereof to the abutting property or to pay it out of the general fund.   The property owner alone may, as it seems to us, complain of this cutting. When he is satisfied, the general taxpayer has no cause for complaint.   The city council stands as his representative, and in the absence of fraud or flagrant mismanagement its action is binding upon each and every individual citizen. If this were not true, contentious individuals might intervene, and stop every proposed improvement by city officials.

But it is argued that the matter of damages to these property owners should have been submitted to a tribunal selected in the manner pointed out by statute for apprais-6. STREET IM- ing such awards.   There are several answers to PROVEMENT: agreement of this.   First.   There is no need for such a tri-parties; pay-ment of cost. bunal when the parties in good faith agree on the amount to be paid.   The city council, as we have said, represents each and every taxpayer in these matters.   The individual taxpayer could not intervene in such a controversy

if he would. Doubtless courts would intervene to prevent fraud or gross mismanagement, but nothing of that kind is charged or shown. Second. These owners were not allowed any damages. They were relieved of special assessments, it is true, for the new macadam which was to be used and the expense of laying the same; but as they had once, and probably twice, paid for the improvement of the street, there was no inequity in this. Moreover, the entire improvement was made pursuant to a valid agreement between the city officials and the property owners for the purpose of getting as good a street as possible with as little damage to the property owners as the circumstances would warrant. Mr. Crapo agreed to these plans, saw the work going on, and made no objection until he found that the cost was to be paid out of the general funds. This was his sole complaint, and, although he knew of the agreement with the property owners, he kept his own counsel until after the work was nearly completed. There is, perhaps, a measure of equity, if nothing more, in his claim that he should not pay the cost of improving the street in front of his own property through special assessments, and at the same time bear a part of the burdens of paying for other street improvements paid out of the general fund, to which he was a contributor. However, it does not appear that he has heretofore paid any special assessments himself, nor that he will be compelled to do so in the future. Moreover, the Legislature has seen fit to repose this matter with the city councils, and to leave it optional with them as to how the cost of street improvements shall be met. Appellant's argument, carried to its logical end, would tie the hands of the Legislature for all time. That is to say, having adopted the theory of special assessments, it could never depart therefrom; and, *vice versa,* if it authorized payment for street improvements out of the general city funds, it could never resort to special assessments. This, of course, cannot be the law. We need not determine whether a city council is bound by an election once made by it under the

statutes, for that question does not arise here, there being no facts upon which to base any such proposition.

There is no evidence that the property owners were paid any damages. They simply waived all claims thereto, and the city undertook to improve the street, and to pay for it out of the general funds. This it clearly had a right to do.

Our conclusions on the entire case find support in the following among other cases: *Wilbur v. Ft. Dodge,* 120 Iowa, 555; *Reilly v. Ft. Dodge,* 118 Iowa, 633; *Duncombe v. Ft. Dodge,* 38 Iowa, 281; *City of Burlington v. Gilbert,* 31 Iowa, 356; *Preston v. Cedar Rapids,* 95 Iowa, 71.

The decree dismissing the petition is *affirmed.*