KEOKUK WATERWORKS COMPANY et al., Appellants, v. KEOKUK a Municipal Corporation, et al., Appellees.

No. 44071.

JANUARY 18, 1938.

Lane & Waterman, G. L. Norman, and Clarence H. Dickey, for appellants.

Stipp, Perry, Bannister & Starzinger, J. E. Newkirk, and E. W. McManus, for appellees.

HAMILTON, J.—This action involves the legality of the proceedings whereby the city of Keokuk, Iowa, undertook to exercise the power which the legislature has vested in "cities and towns * * * to purchase, establish, erect, maintain, and operate * * * waterworks," etc., section 6127, Code 1935. The fact that power exists in the city to do what it undertook to do is not questioned. The bone of contention is the manner of doing it.

For approximately fifty years, the Keokuk Waterworks Company, one of the plaintiffs and appellants, has been furnishing the city of Keokuk and its inhabitants with water. Since 1917 it has operated without a franchise, merely by the acquiescence of the city. In 1935 the city undertook to establish a municipally owned waterworks plant under the provisions of what is known in this state as the Simmer law, enacted by the 44th General Assembly, chapter 158. A special election was held in October, 1935, resulting in a vote of 2591 for the proposition and 1048 against it. Pursuant to the election, the city council employed an engineer to prepare plans and specifications. Notice of hearing on the plans, specifications, and form of contract was published, and also notice to bidders for the construction of the improvement. There was a hearing before the city council, and the bids for the construction of the improvement were opened, but, before the contract was finally let, this suit was commenced and the temporary injunction procured halting further proceedings until final hearing. On August 3, 1935, which was prior to the holding of the election, the City of Keokuk had made an application to the Federal Emergency Public Works Administration for a grant to aid in financing the construction of a municipal waterworks system. To this application the Keokuk Waterworks Company made and filed resistance, and at the time the proposition was submitted to the

voters, no grant had as yet been made. Since the decision of this case by the trial court, the City of Keokuk has been notified by the Federal Emergency Public Works Administration that its application for a grant has been allowed, and that a grant of $157,500 has been allotted to the project of the construction of said plant.

The trial court held that the proceedings pertaining to the election were valid, and that the proposition of establishing such municipal waterworks was approved by an affirmative vote of the electors as required by law, and that the city was empowered to establish a municipal waterworks, either by purchase and improvement of the existing waterworks, or by constructing a new system. The court, however, found against the defendant city on two items; namely, that the specifications and form of contract for the construction of the said municipal waterworks plant did not comply with Code section 1171-d1, as to preference for hired labor, and did not comply with Code section 10310 and section 10312, as to the percentage of the payments earned by the contractor which shall be retained by the municipality for a period of thirty days after the completion and acceptance of the improvement, and that, as to the switchboard specifications, without being made more specific in one respect, they did not comply with the requirements of competitive bidding; but in all other respects the court approved the plans and specifications and form of contract, and all proceedings pertaining thereto. The court further found that the resolution employing the engineer to prepare the plans and specifications and supervise the construction of said improvement did not comply with the requirements of Code section 6553, in that said resolution was not on file with the city clerk in the form in which it was finally prepared for one week before the final adoption thereof, and by order and decree the court permanently enjoined the defendants from entering into a contract for the construction of said municipal waterworks system until the above requirements had been complied with, and as to all other issues the petition of plaintiff was dismissed and costs were equally divided between the plaintiffs and defendants. From this decree the plaintiffs have perfected an appeal. The defendants did not appeal.

By the pleadings filed in the lower court the question was raised as to the right of the plaintiffs to maintain this action. Appellees admit in argument that the decree in effect is against

the appellees on this point, and the question was not argued to the trial court, and, since the appellees have not appealed, this matter is not before us, and will be given no further consideration.

Statutory authority for the construction or acquisition of a municipal waterworks plant and distribution system is found in section 6127 of the Code, which reads as follows:

"Cities and towns may purchase. Cities and towns shall have the power to purchase, establish, erect, maintain, and operate within or without their corporate limits, heating plants, waterworks, gasworks, or electric light or power plants, with all the necessary reservoirs, mains, filters, streams, trenches, pipes, drains, poles, wires, burners, machinery, apparatus, and other requisites of said works or plants, and lease or sell the same."

Section 6131 of the Code provides in substance that no such works or plants shall be authorized, established, erected, purchased, etc., unless a majority of the legal electors voting thereon vote in favor of the same. Section 6132 provides that "the council may order any of the questions provided for in sections 6127 to 6131, inclusive, submitted to a vote," etc.

The question submitted by the city council to the electors in this instance read as follows:

"Shall the city of Keokuk, Iowa, establish a municipal waterworks system by purchase and improvement of the existing waterworks or by constructing a new system, the maximum expenditure for the establishment of such waterworks system (exclusive of any gift or grant received from the government of the United States or any agency thereof) not to exceed the sum of $848,456.76, which shall be paid solely and only out of the earnings of said waterworks, without the incurring of any indebtedness therefor by the city of Keokuk, Iowa."

The appellants in their brief and argument present fifteen different propositions wherein they contend the trial court erred. The two major propositions, as we view the situation, are the first and second: (1) The appellant contends that the trial court erred in refusing to hold that the proposition submitted to the voters was wholly invalid, in that it failed to state the maximum amount to be expended for the construction or acquisition of a municipal waterworks plant and distribution system;

(2) the court erred in refusing to hold that the election was a nullity in that the proposition submitted to the voters was invalid because of duality. We will consider these propositions in the order mentioned.

■■■ It will readily be observed that their solution hinges largely on the construction of the statutory provisions above set out. The purpose of construction of statutes is to ascertain and if possible give force and effect to the manifest intent of the legislature as embodied in the statute. Seavert v. Cooper, 187 Iowa 1109, 175 N. W. 19; State v. City of Des Moines, 221 Iowa 642, 266 N. W. 41. The object and purpose which the law was intended to accomplish should be sought out, if possible, and, once ascertained, it is the duty of the court to give it force and effect, if this can be done without running counter to established legal precedents. It is the contention of appellants that the legislature not only granted the power, but also prescribed the manner in which this power shall be exercised, and that this is plainly stated in the statute itself, and that the statute is not open to construction, and is mandatory. Appellees contend that the words ''Maximum amount which may be expended'' do not have reference to the total cost or extent as to the size, but since this language is found for the first time in the Simmer law, which has to do only with payment out of earnings, it necessarily must have reference to the maximum amount which may be expended out of earnings from the plant; that, since in no event may any part of the cost come from taxation or out of the city treasury, the electors have no interest in the size of the plant or its total cost, but only in the sum which they may be called upon to pay on the initial cost out of earnings.

I. The Simmer law has been before this court and many phases thereof have been considered and the law interpreted, but in no case has the exact proposition now confronting us been given special consideration. The uncertainty or lack of exactness or definiteness in the proposal submitted to the electors, if any exists, lies in that portion of the proposition which is enclosed in parentheses, relating to the grant from the government agency. The chief objection urged against this may be summarized by stating that it would permit the city council, if they could acquire a gift of sufficient amount, to build a plant that would be too large and unwieldy and add to the cost of overhead or operating expenses and to the maintenance costs,

which under other provisions of our statute might be compelled to be met by taxation, should the earnings be insufficient, and that to avoid this situation the legislature used the words "maximum amount which may be expended" advisedly, and had no intention of limiting such phraseology to "earnings."

■■■ The court should not imagine vain things or indulge in fanciful or extravagant assumptions in the interpretation of statutory provisions in order to conjure up a basis or reason for overriding the express will of the electorate. As we view the proposition, there is nothing difficult of comprehension as to the meaning and intent of the legislature in making use of the phrase "maximum amount which may be expended." What was the subject matter under consideration? Was it the size, style, or manner of the structure? Certainly not. That is left finally to the judgment and discretion of the city council. Did it relate to the power of the city to establish the plant? The city already possessed such power (section 6127, Code of Iowa, 1935) long before the amendment known as the Simmer Law was enacted, but cities did not have the power to pay for such plants solely out of future earnings prior to the enactment of the Simmer law. Van Eaton v. Sidney, 211 Iowa 986, 231 N. W. 475, 476, 71 A. L. R. 820 (decided in June, 1930). At the very next session of the legislature (44th General Assembly, 1931) after this Sidney case was handed down, the Simmer law was enacted (chapter 158, Acts 44th General Assembly) which is entitled "An Act to amend section sixty-one hundred thirty-four (6134) of chapter three hundred twelve (312) of the code of Iowa, 1927, relating to public utility plants, and to provide additional methods of paying for said plants," etc. So it will be observed the subject under consideration was *additional methods of paying*. What methods were proposed? Payment out of earnings, and when the legislature used the expression "maximum amount which may be expended" (or paid), the perfectly natural inference is that this had reference to the subject matter, namely, earnings.

It must be conceded that under the statutes of this state (Code section 10188), the city of Keokuk was authorized to accept a gift in the public interest. It is a strange doctrine, advanced by the appellants, that this gift from Uncle Sam of real, honest-to-goodness money may be construed as a curse instead of a blessing to the good citizens of Keokuk, and the

bigger the gift, the greater the curse. We fail to see the point to this. Isn't it reasonable to infer that when the legislature left the matter to the voters to determine, the thing they were to determine was something that was going to be vitally important to them, namely, how much they were going to be burdened by the proposition? If we have kept abreast of the historical progress of legislation touching the various public projects which the lawmakers have seen fit to require to be submitted to the electors, in which may be found limitations as to the amounts to be expended and statutory requirements that these amounts be made definite and certain, we will understand that such laws have for their primary purpose the prevention of boards, commissions, city councils, and other executive and administrative officers, overreaching and circumventing the will of the people, and, by means of loopholes and jokers in statutes and public proposals, managing by some legerdemain to increase the burdens to the taxpayers. In this, we are sure, will be found the real evil sought to be remedied by these statutory provisions; and hence, from time to time as the experiences of men revealed these overreachings, legislative bodies have sought to plug up the leaks by requiring definite proposals. In the erection of public buildings and other civic improvements, many times promoters of such projects have sought to build greater than the voters generally were willing to stand for, and propositions have been couched in such language as to mislead the voters, enabling boards of supervisors or city councils, or other bodies in control, to obtain appropriations from other funds or additional grants to complete the projects, thus greatly increasing the actual burden upon the public, which must in the end pay the bill. Prior to the enactment of the Simmer law cities had power to establish waterworks and issue bonds and levy taxes to meet them, and this may still be done, but the public must authorize it by a vote, and the total amount of the bonded indebtedness and bonded rate of interest and tax levy must be contained in the proposition and printed on the ballot so that the voters may know in advance the amount of the burden or indebtedness to them.

If the city of Keokuk had proceeded under these statutory provisions found in chapter 319, section 6238 et seq., of the Code instead of under the Simmer Law, would anyone question the right of the city to accept a gift of money from any source

to put with that obtained from the authorized bond issue to erect a much larger and more efficient waterworks system? Is there anything in the law to prevent it, and to render the proceedings under the bond issue illegal? Certainly not. Why? Because it adds nothing to the indebtedness or burden of the taxpayer. The Simmer Law added nothing to the power of cities to build. It only added an additional method of paying. It is the child of opportunity, opportunity on the part of cities who wish to get something that could not be acquired by ordinary taxation, and an opportunity for the salesmen of certain products and certain well-known equipment to start the municipality on the road (sometimes not so smooth) to municipal ownership. In other words, another way was provided for getting money to spend on public projects. The requirement that the maximum amount to be expended be stated in the proposition is not to satisfy the curiosity or prevent a pleasant surprise such as a gift to the city. If this additional cost, due to government grant, were to come out of earnings and had to be paid back, it would, of course, be altogether different. If they built on too large a scale, it might take them a lifetime to pay for it, but a gift of $150,000 which they will never have to repay from earnings or by any other method, adds nothing to the initial cost to the electors; neither does it increase their burdens. The language of the Kansas court in the case of Wright v. Board of Education, 106 Kan. 469, 188 P. 439, 441, is quite applicable here:

"Such restrictions are intended to protect the taxpayer [under the Simmer Law it would be consumers] by limiting their liability in the matter, and not to prevent the acceptance and utilization of voluntary contributions in aid of public enterprises."

See also Iowa Southern Utilities Co. v. Town of Lamoni, D. C., 11 Fed. Supp. 581, to the same effect, and Liggett v. Abbott, 192 Iowa 742, 185 N. W. 569.

In the case of Pennington v. Town of Sumner, 222 Iowa 1005, 1009, 270 N. W. 629, 632, 109 A. L. R. 355, we said that the total amount which might be expended related to initial cost of a completed plant, and did not include amounts to be paid out in the future by way of interest, and in the same case we find this specific statement as to the requirements of the statute in submitting a proposition under the Simmer Law:

"We think, therefore, that it may be said that the requirements of this statute are that the proposition stated on the ballot must show: (1) That it has reference to a plant to be paid for out of earnings; (2) the maximum amount to be expended; (3) the kind of plant for which the money is to be expended."

In other words, when payment is to be made under the Simmer Law, it is a plant to be paid for out of earnings that the voters are passing upon. When the payment is to be made by a bond issue under the law as it stood before the enactment of the Simmer Law, the attention of the voters is directed to the total amount of bonded indebtedness proposed. Under the old law it was total amount of bonded indebtedness; under the Simmer Law it is maximum amount to be expended out of earnings. In neither instance do we find any provision in the statutes relating thereto, either express or implied, which inhibits the city from accepting a gift of money or property which may be used in connection with earnings in the establishment of such a plant, as long as it does not increase the amount of indebtedness, or amount to be paid out of earnings, and the contract price does not exceed the amount authorized by the voters to be paid out of earnings, plus the amount of the gift or grant obtained from the government agency.

■■■ There is nothing in this record to indicate that the city council is not keeping, or will not keep, within such bounds. The evidence is exactly to the contrary, and we cannot indulge in vain and imaginary assumptions that the officers of the city will not do their duty in a reasonable and regular manner. Injunctive relief may not be granted on any such basis. There must be some present, tangible, existent infraction or threatened infraction of legal power and authority, with resultant injury and damage to plaintiffs to warrant injunctive relief. This principle applies to the plaintiffs' contention that the city officials might build a plant far beyond the needs of the city if they could obtain a sufficient gift or grant to do so, and thereby increase the overhead or operating expenses and maintenance cost to such a point as to be burdensome to the consumers. The thing that is to be submitted to the voters is the maximum amount going into the initial cost of establishing the plant, and has no reference to maintenance cost. The case of O'Keefe v. Hopp, 210 Iowa 398, 228 N. W. 625, is not in point. There the

statute, section 4678, required the entire proposition to be set out in the ballot. Not only that, but that case involved a partial construction of a bridge, and there was a cogent reason for saying something about how and by whom the other part of the bridge was to be constructed, in order that the part voted for would not be lost by failure to complete the same.

■■■ Furthermore, the maintenance and operating cost will have to be paid out of gross earnings. The provisions of paragraph 17 of section 6211 and section 6142 of the Code of 1935 have no application to a plant established under the Simmer Law until it is paid for. It is the net earnings which are to be used, and which are pledged by the plain provisions of the statute, for taking care of the cost of establishing such plant. "Net" means what is left after operating expenses and maintenance costs are paid. The statute (section 6134-d2) expressly provides that the contract for the construction of such plant "shall not constitute a general obligation or be payable in any manner by taxation. * * * Under no circumstances shall the city be in any manner liable by reason of the failure of the net earnings being sufficient for the payments provided in the contract." Similar provisions are found in sections 6134-f1 and 6134-f2, relating to revenue bonds, and specific provision is made for pledging the plant as security, and that bonds can be paid only out of "net earnings of the plant." Therefore, until the plant established under the Simmer Act is completely paid for out of earnings and the plant is held and owned free from restrictions of such Simmer Law the city will have no power under paragraph 17, section 6211 or section 6142, to pay out of tax money any expense of running, operating, or repairing such plant. Such, we think is the plain import of the Simmer Law.

A close analysis of the case of Gehin v. Board of Commissioners of City of Newark, N. J., 182 Atl. 869, 870, 14 N. J. Misc. 121, a case cited and relied upon by appellants, will reveal that it supports the appellees' theory rather than the appellants'. The proposition involved in that case was the erection of a hospital building that would cost about $4,500,000, but the main hospital unit could be constructed, it was estimated, for $3,090,909, of which the Relief Administration was willing to grant 45 per cent or the sum of $1,390,909. This would leave an obligation for the city of $1,700,000. The raising of this amount of money, it was conceded, would exceed the borrowing

capacity of the city. To avoid this, an ordinance was adopted providing for the issuance of $1,200,000 of bonds only, and the plaintiffs in that action sought by certiorari to test the legality of this ordinance. The statute under which they were operating provided:

"An authorization of the issuance of the bonds or notes, or both, stating in brief and general terms sufficient for reasonable identification, the purpose or purposes for the financing of which the obligations are to be issued, and a statement of the maximum amount of money to be raised for the purpose, and if for several purposes, the maximum amount of money for each purpose." N. J. St. Annual 1935, §*136—4600M(202), subd. (a). The prosecutor contended that a proper construction of the statute was that it requires that the ordinance state the entire amount of money to be raised for the contemplated improvement. The city on the other hand contended that the requirement was that the ordinance should state the maximum amount of money to be presently raised by the issuance of bonds or notes for the purpose described in the ordinance, and that the words "a statement of the maximum amount of money to be raised for the purpose" did not mean a statement of the total amount of money to be raised before the completion of the project. The court said:

"The sole problem is to determine the legislative meaning in requiring a statement of the maximum amount of money to be raised for the contemplated purpose. We think the words mean that the greatest amount of money to be raised for the purpose shall be stated. Otherwise, the words are meaningless. An ordinance merely authorizing $1,200,000 of hospital bonds indicates that $1,200,000 is to be presently raised, but it does not show what is the maximum amount to be raised for the indicated purpose. It is obvious that since more money must be raised to construct the hospital, the ordinance must state the greatest amount to be raised for that purpose. Otherwise, the legislative provision is put at naught. Obviously, the purpose of the enactment was to prevent the commencement of an undertaking which might not be completed because of lack of funds. The concept once prevalent that values could always be increased has long since been disproved. The legislature intended that municipalities should declare in the ordinance

authorizing the issue of bonds the highest amount of money to be raised for a specific purpose. The greatest or highest amount to be raised must necessarily mean a sum of money known to be necessary to complete. Otherwise, a dozen bond issues might be necessary, and perhaps some would go beyond the limit and the project would ultimately fail after millions had been spent.''

It will be noted that the total amount here referred to was the total amount to be raised by bond issue, not the total cost of the completed structure. In that case the government was furnishing $1,390,909 of the total amount to be expended, and there was no reference to this in the ordinance, and no indication in the court's opinion that it was necessary to say anything about this in the ordinance with reference to raising the rest of the money by bond issues. Cases from other jurisdictions are not of much value, for in none of the jurisdictions from which cases are cited do we find statutes similar to the Simmer Law.

 There are some expressions in some of our cases which lend support to appellants' contention. For instance, in the case of Pennington v. Fairbanks, Morse & Co., 217 Iowa 1117, at page 1121, 253 N. W. 60, 62, we find this statement:

''The maximum cost of the proposed municipal plant, according to section 6134-d3 of the 1931 Code, above mentioned, must be set forth on the ballot submitted to the electors.''

But in that case the court did not have under consideration interpretation of this specific language of the statute, and did not have under consideration the determination of the legal questions confronting us in the instant case, and this case can not be considered authority binding upon the court in the determination of the issue now confronting us. Likewise, the cases Muscatine Lighting Co. v. City of Muscatine, 205 Iowa 82, 217 N. W. 468; McLaughlin v. Newton, 189 Iowa 556, 178 N. W. 540, and other like cases cited and relied upon by appellants are all distinguishable. Neither does the rule of strict construction advanced by the appellants apply in construing statutes relating to the manner of exercising expressly granted power. The rule of strict construction applies in determining the question as to whether or not power exists in the city council. This is due to the fact that there is no inherent power vested

in a municipality. The rule is stated in Van Eaton v. Town of Sidney, supra:

"A municipality is wholly a creature of the legislature, and possesses only such powers as are conferred upon it by the legislature: that is, (1) such powers as are granted in express words; or (2) those necessarily or fairly implied in or incident to the powers expressly conferred; or (3) those necessarily essential to the identical objects and purposes of the corporation, as by statute provided, and not those which are simply convenient. 1 Dillon on Municipal Corporations (5th Ed.), Section 237; Clark v. City of Des Moines, 19 Iowa 199, 87 Am. Dec. 423; City of Clinton v. Cedar Rapids & M. R. R. Co., 24 Iowa 455; Heins v. Lincoln, 102 Iowa 69, 71 N. W. 189; State ex rel. White v. Barker, 116 Iowa 96, 89 N. W. 204, 57 L. R. A. 244, 93 Am. St. Rep. 222; State ex rel. County Attorney v. Des Moines C. R. Co., 159 Iowa 259, 140 N. W. 437; Merrill v. Monticello, 138 U. S. 673, 11 S. Ct. 441, 34 L. Ed. 1069."

But a different rule is applied when dealing with the exercise or carrying into effect of powers expressly or plainly granted. The rule in such cases as stated by Judge Dillon in 1 Dillon on Municipal Corporations, 5th Ed., page 453, is as follows:

"The rule of strict construction does not apply to the mode adopted by the municipality to carry into effect powers expressly or plainly granted, where the mode is not limited or prescribed by the legislature, and is left to the discretion of the municipal authorities. In such a case the usual test of the validity of the act of a municipal body is, Whether it is reasonable? and there is no presumption against the municipal action in such cases. The general principles of law, stated in this and in the preceding sections, are indisputably settled."

Likewise, the rule is stated by Judge Cooley in City of Port Huron v. McCall, 46 Mich. 565-574, 10 N. W. 23, 26, in these words:

"There is a principle of law that municipal powers are to be strictly interpreted; and it is a just and wise rule. Municipalities are to take nothing from the general sovereignty except what is expressly granted. But when a power is conferred which

in its exercise concerns only the municipality, and can wrong or injure no one, there is not the slightest reason for any strict or literal interpretation with a view to narrowing its construction.''

Another statement of the rule is found in Waldschmit v. City of New Braunfels, Tex. Civ. App. 1917, 193 S. W. 1077, 1080, 1 Dillon 5th Ed. Sec. 239:

''In determining whether or not a power has been granted to a municipal corporation, the presumption is against such a corporation, but in determining whether or not it is properly exercising a granted power, the presumption is in favor of such corporation, and to enjoin it from so doing, it must be made clearly to appear that it is abusing its discretion.'' 1 McQuillin, Mun. Corp. 2d Ed., page 925, states the rule thus:

''When the authority to exercise the power appears, wide latitude is allowed in its exercise, and, unless some abuse of power or a violation of organic or fundamental right results, it will be upheld. A municipal corporation when exerting its functions for the general good, is not to be shorn of its power by mere implication. The intention to restrict the exercise of its powers must be manifest by words so clear as not to admit of two different or inconsistent meanings.''

In this state the rule is stated in Lyon v. Civil Service Commission, 203 Iowa 1203, 1209, 212 N. W. 579, 581, as follows:

''It is elementary that, unless expressly or impliedly restrained by statute, a municipal corporation may, in its discretion, determine for itself the means and method of exercising the powers conferred thereon.''

See, also, as bearing more or less on this matter, City of Hudson v. Board of Education, 158 Misc. 583, 287 N. Y. Supp. 620.

Most of the cases from this state, cited and relied upon by the appellants, are cases dealing with a proposition where there was something which misled the voters to their detriment. There is nothing of the kind in this case. There was no indication as to how much or how little would be received from the government grant. The city council gave the voters all the information they had at the time the proposition was submitted, and there was no effort made to conceal anything or to in any way mislead

the voters by the proposition contained on the ballot, and in our opinion there was nothing that in any way affected the legality of the vote. It was perfectly proper to give the voters all the information at hand, but, had the parenthetical clause been entirely omitted, there would still be sufficient in the proposition to fully comply with the requirements of the Simmer Law, and the adding of the parenthetical clause was mere surplusage.

 II. On the proposition of duality, urged by appellants in division 3 of their argument, courts are not in accord, but the decided weight of authority is against the appellants' contention. The majority rule is well stated in the case of State v. Snyder, 129 Ohio St. 206, 194 N. E. 415, 416, as follows:

"According to the great weight of authority, expressions such as the one involved here do not express duality of purpose [the expression referred to reads 'acquiring or constructing waterworks']. City of Albuquerque v. Water Supply Co., 24 N. M. 368, 174 P. 217, 5 A. L. R. 519; C. B. Nash Co. v. City of Council Bluffs (C. C.), 174 F. 182; People v. Sisson, 98 Ill. 335; Truelsen v. Mayor, etc., of City of Duluth, 61 Minn. 48, 63 N. W. 714; Henderson v. City of Shreveport, 137 La. 667, 69 So. 88, 5 A. L. R. 516; Tulloch v. City of Seattle, 69 Wash. 178, 124 P. 481; Thomas v. City of Grand Junction, 13 Colo. App. 80, 56 P. 665; State ex rel. City of Columbia v. Allen, State Aud., 183 Mo. 283, 82 S. W. 103; Everett v. Village of Potsdam, 112 App. Div. 727, 98 N. Y. S. 963; Simpson v. City of Nacogdoches (Tex. Civ. App.), 152 S. W. 858; Beers v. City of Watertown, 43 S. D. 14, 177 N. W. 502. The reasoning of these cases is in substance that the purpose is the single one of establishing municipal ownership of a public utitlity, and that the method of acquirement, whether by purchase or construction, relates only to the means; in accordance with this principle, one scheme of municipal improvement relating to one kind of utility is considered as involving one subject. Although such expression of purpose leaves to the council of a municipality the choice of acquiring a public utility by purchase or by construction, there is still only one objective. In this way the municipality through its council is given the liberty to purchase an existing waterworks if satisfactory terms are offered, or to construct its own plant if it considers the terms disadvantageous. To afford opportunity to the council to select the preferable of two alterna-

tives is to the interest, not only of the municipality, but, in many instances, to an existing private utility as well; the latter may choose to sell at a reduced price rather than to incur the risk of ruinous competition from a publicly owned utility enterprise. There are a few cases in which the contrary rule is adhered to, and citations sustaining both the majority rule and the minority rule are collected by the compiler in an annotation in 5 A. L. R. 538, 549.''

It should be said, however, that this Ohio case was decided on other grounds, namely, special statutory provisions. We have read the cases cited by appellants from the standpoint of the minority rule, the latest of which is Julson v. City of Sioux Falls, S. D., 48 S. D. 452, 205 N. W. 43, and while there is much merit in the reasoning of the South Dakota court in taking issue with the majority rule, we are of the opinion that the most salutary rule for all concerned is that set forth in the excerpt from the Ohio case. Hence, we conclude that there was no duality in the proposition submitted in the instant case.

III. Appellants also contend that the election was vitiated by fraud and false representations made by the officers of the city in a pre-election campaign which was carried on in the same newspaper in which the official notice of the election was contained. There is no merit in this contention. In the main the statements were in the nature of refutations of positive statements made by the Keokuk Waterworks Corporation in a systematic pre-election advertising campaign against the measure, and were, at least in part, justifiable under the circumstances. There is no showing that any individual was in any manner influenced thereby or that the result of the election was affected. Similar questions were considered by this court in the case of Chambers v. Board, 172 Iowa 340, 154 N. W. 581; Johnson v. Inc. Town of Remsen, 215 Iowa 1033, 247 N. W. 552, and the conclusions announced in these cases fully support our findings. As bearing on the question of collateral attack in matters of this kind see Epping v. City of Columbus, 117 Ga. 263, 43 S. E. 803, 812; West Missouri Power Company v. City of Washington, 10 Cir., 80 F. 2d 420; Detroit United Railway v. City of Detroit, 255 U. S. 171, 41 S. Ct. 285, 65 L. Ed. 570, 576. The cases of Palo Alto County v. Harrison, 68 Iowa 81, 26 N. W. 16; Chicago, Milwaukee & St. Paul Ry. Co. v. Shea, 67 Iowa 728,

25 N. W. 901; Starr & Rand v. Board of Supervisors, 22 Iowa 491; Carrothers v. Russell, 53 Iowa 346, 5 N. W. 499, 36 Am. Rep. 222, cited and relied upon by appellants, are all clearly distinguishable and have no application under the record in this case. The real object. aimed at in the election was proprietary interest and municipal control of the waterworks system, either by taking over all or a part of the system, or by establishing a new system, and we fail to see how the voters could have been misled by statements to the effect that the city did not intend to construct a new plant, if they could deal fairly with the appellant corporation.

■■■ IV. Appellants' fifth proposition, that the electors are entitled to know from the terms of the ballot exactly how the plant is to be paid for, whether by taxation, whether out of earnings, or whether in some other specified manner, has already been disposed of in the discussion of the first proposition. As stated in Wyatt v. Town of Manning, 217 Iowa 929, at page 938, 250 N. W. 141, 144:

"The elector is interested in knowing only whether the plant shall become a general indebtedness payable by taxation, or whether it is to be constructed from the earnings of the plant in such a way that the contract shall not constitute a general obligation against the city."

All these matters were fully covered by what was contained in the proposition submitted to the voters in the instant case. It therein was plainly specified that .in no event was this plant to become a general obligation payable out of taxation. There was no unknown quantity or unknown source from which money that would be needed to complete the construction was forthcoming as was the case in O'Keefe v. Hopp, 210 Iowa 398, 228 N. W. 625, cited and relied upon by appellants. The grant from the government agency is in the nature of a gift and is not required to be repaid. Hence, it adds nothing to the obligation of the electors, and as long as the contract is kept within the bounds of the amount which the electors have authorized to be pledged out of earnings, and the sum allowed by gift or grant. from the government, the contingency, spoken of in many of these cases relied upon by appellants, of having an incompleted structure, creating the necessity for completing the structure out of other funds, does not and cannot exist. We are un-

able to see how any voter could have been misled to his injury or prejudice by the form or substance of the proposition submitted to the electors in the case at bar.

V. There is no merit in appellants' contention that the election was not carried by the required number of votes. There was a clear majority of the votes cast in favor of the proposition, and this is all that is required by section 6131 of the Code, and appellants' contention that the vote in this case is governed by Code section 6246, which comes under chapter 319, section 6238 et seq., of the Code, is not well founded. This court disposed of that question adversely to appellants' contention in the case of Chitwood v. Lanning, 218 Iowa 1256, 257 N. W. 345, wherein the court held that elections under the Simmer Law are controlled by chapter 312, section 6127 et seq., of the Code, and that the requirements of chapter 319 are not applicable.

VI. Appellants next contend that the court erred in not holding that the resolutions calling the election, establishing the plant, and ordering a hearing on the plans and specifications, were required to remain on file with the city clerk for inspection at least one week before final adoption, and cite in support of such contention section 6553 of the Code. We are inclined to agree with the trial court that the only matter involved in this case covered by this section was the contract, and the trial court was right in holding that the contract must remain on file for one week before it was finally entered into and adopted by the city council, and in ruling against the appellants as to the other matters. We are likewise in accord with the trial court's finding, of which the appellants also complain, that it was not necessary that the city council establish the municipal waterworks plant by ordinance, but that resolution was sufficient. The matter had been fully submitted to the voters and approved by a majority vote. It simply remained for the council to carry out the mandate of the people in the way and manner provided by the statute. No additional power or authority could be acquired by the council by the passing of an ordinance. We think under such circumstances the resolution was sufficient. Martin v. City of Oskaloosa, 126 Iowa 680, 102 N. W. 529, 3 Ann. Cas. 651. See, also, National Tube-Works Co. v. City of Chamberlain, 5 Dak. 54, 37 N. W. 761; Shelby v. City of Burlington, 125 Iowa 343, 101 N. W. 101; City of Alma

v. Guaranty Savings Bank, 8 Cir., 60 F. 203, 206; Board of Education of Atchison v. DeKay (Kan.), 148 U. S. 591, 598, 13 S. Ct. 706, 37 L. Ed. 573; Illinois Trust & Savings Bank v. City of Arkansas City, 8 Cir., 76 Fed. 271, 286, 34 L. R. A. 518; 2 McQuillin, 2d Ed., section 666. We think it permissible to proceed either by ordinance or by resolution, and indeed it is doubtful whether under the provisions of chapter 312 it was necessary even to pass a resolution. The city council possessed all the mandate required in the vote taken, and any orderly procedure by which it carries out this mandate, if not in conflict with statutory law, would, we think, be sufficient. A resolution is a very appropriate method of announcing and preserving a record of the objects and purposes of the city in pursuance of such mandate.

VII. The contention of appellants is that the court erred in holding that sections 1171-b1 and 1171-b2 are not applicable to the situation involved in this case, to wit: the letting of the contract for public improvement. This court has never passed directly upon this matter, but we are abidingly satisfied from a reading of the sections of the code referred to that they have no application to the letting of such a contract, and that the trial court was right in so holding.

VIII. It is also contended by appellants that the contract should have specified the rate of interest to be charged as provided in section 6134-d2 of the Code. This provision can have no application to the situation here for the reason that the council in the instant case proposes to pay the contractor in cash by the method provided by section 6134-f1, which provides for defraying the cost of such plant by the issuing of negotiable, interest bearing, revenue bonds. It is necessary that the council determine in advance which method they will pursue in order that the law requiring competitive bidding be observed and complied with. If they were going to pay the contractor under the provisions of the law as it existed prior to the enactment of the revenue bond act contained in sections 6134-f1 to 6134-f3, inclusive, then it would be necessary that the rate of interest be stated in the contract, but where they determine, as in this case, to pay the contractor cash by issuing revenue bonds, we think the reason for the inclusion in the contract of the rate of interest ceases to exist, and it would be greatly to the disadvantage of the city in the sale of the bonds if it were required in advance

that the rate of interest be stated in the construction contract. Under this revenue bond act it is proposed by the city of Keokuk to sell the bonds letting the bidders bid the lowest rate at which they will take the bonds at par, and the rate of interest will thus depend upon the bids received. Therefore we think the trial court placed a feasible, practical, and logical construction upon this matter, when all the provisions of the law are considered.

IX. Another alleged error is based on the holding of the trial court that section 1171-b2 of the Code was not applicable to this proceeding, appellants contending that the specifications did not comply with said section, and hence there was a violation of this section and also section 6134-d5 in reference to competitive bidding. In several instances the specifications called for the furnishing of an article or articles by trade name or other individual identification mark, and the appellants contend that this violates said Code section 1171-b2, which requires the use of general terms and prohibits the use of trade names or other individual marks. We have already indicated that it is our conclusion that the trial court was right in holding that this section does not apply to the letting of contracts such as involved in this proceeding. In most instances in the specifications, the trade name was followed by the words "or equal" and it is the contention of appellants that the use of these words did not cure the evil, and they cite the case of Jenkins Township v. Public Service Commission, 65 Pa. Super. 122. Apparently this is the only case that counsel was able to find, and it is not in harmony with the weight of authority. The matter of definiteness and particularity by which articles should be described in the notice to bidders, or in the specifications upon which bidders are asked to submit their bids, has been fully reviewed by two well-considered cases in this state. The first is the case of Hoffman v. Muscatine, 212 Iowa 867, 232 N. W. 430, 77 A. L. R. 680, opinion by Justice Evans, and more recently the case of Brutsche v. Inc. Town of Coon Rapids, 223 Iowa 487, 272 N. W. 624, opinion by Judge Mitchell.

No useful purpose would be served by again reviewing the authorities. With but three or four exceptions, to which attention is directed by the trial court in his findings, when an article was referred to by trade name only it was followed by the words "or equal". There is no claim that the articles used as stan-

dard were not fully approved by the codes of standards governing such matters. We think the trial court was right in holding that the few instances where the named articles were not followed by the term "or equal", or words equivalent, were not of sufficient materiality, considering the small value or cost of such articles as compared with the cost of the entire contract, to warrant the court in interfering by injunction. For instance, one item mentioned is "One Kewanee Mfg. Co., No. 1748, Type R, Electric Welded Boiler." It is disclosed by the evidence that this is a patented product, that the amount involved in this item is $500. The record also shows that there are other boilers of that class, but not of that particular construction. Another item is "One No. 28 Excelso Indirect Water Heater." The amount of this item is $50, and it is shown that it is the best water heater and best suited to this plant. Neither of the companies manufacturing these particular products is shown to have been a bidder.

We do not wish to be understood as receding in any manner from the rule requiring competitive bidding, but if there may be free and fair competitive bidding, when a certain patented article is required, we should be slow to announce a rule that would interfere with the use of such article on the part of the municipality. It is not intimated that these items of material mentioned were not accessible to all the bidders. As bearing generally upon this question see the cases: City of Springfield v. Haydon, 216 Ky. 483, 288 S. W. 337; Gilsonite Construction Co. v. Arkansas McAlester Coal Co., 205 Mo. 49, 103 S. W. 93; Mulrein v. Kalloch, 61 Cal. 522; Barber Asphalt Paving Co. v. Gogreve, 41 La. Ann. 251, 5 So. 848; Holmes v. Common Council of City of Detroit, 120 Mich. 226, 79 N. W. 200, 45 L. R. A. 121, 77 Am. St. Rep. 587; Busch v. Joint Drainage District, 198 Iowa 398, 198 N. W. 789; Ampt v. Cincinnati, 17 Ohio Cir. Ct. R. 516; Id., 60 Ohio St. 621, 54 N. E. 1097; Jenney v. Des Moines, 103 Iowa 347, 72 N. W. 550.

Some other matters touching the question of competitive bidding, which it is claimed render the proceedings invalid, are called to our attention by appellants, but we do not deem it necessary to specially consider the same. We have carefully read and studied the arguments advanced and the authorities in support thereof, and in our opinion there is no merit in them. In one or two instances we might be inclined to say that the trial

court gave the appellants more than they were entitled to, but appellees did not appeal, and while the case has been considered de novo here, these matters are not of sufficient importance to warrant interfering with the trial court's conclusions.

The decree of the trial court is therefore accordingly affirmed.—Affirmed.

STIGER, C. J., and DONEGAN, ANDERSON, KINTZINGER, and MITCHELL, JJ., concur.